SCHRUBBE and wife, Appellants, vs. CONNELL, Respondent.

*September 26 — October 11, 1887.*

*Appeal, harmless errors: Master and servant.*

1. The verdict of a jury upon a question of fact, fairly submitted to them on conflicting evidence, is conclusive upon appeal.
2. A judgment will not be reversed for the admission of evidence which was immaterial and could not prejudice the appellant; or for the rejection of evidence as to the amount of his damages, which did not prejudice him because the jury found him not entitled to damages.
3. It is not error to refuse to submit to the jury for a special verdict questions as to matters not controverted on the trial; nor to submit to them questions which are pertinent, where, under the instructions given, they could not have been misled to suppose that if they found for the defendant on the first they must also find for him upon the second.
4. The relation of master and servant does not exist between the superintendent of a county hospital and the inmates thereof; and such superintendent is not liable for a trespass committed by such inmates in procuring bark for use at the hospital, under, but not in accordance with his directions, and not resulting from his carelessness in giving them directions.

APPEAL from the County Court of *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as part of the opinion:

This action was brought by the appellants against the respondents, *Connell* and others, to recover damages for a

trespass upon the real estate of the appellants. The trespass alleged to have been committed by the respondents was the removing of the bark from a large number of trees standing and growing on the lands of the appellants, and carrying away such bark.

The main facts in the case are the following: The respondent *Connell* is the superintendent of the county hospital of Milwaukee county, and the other respondents were inmates or patients in said hospital. Some bark was desired by the superintendent to cover a rustic summer-house on the hospital grounds. The hospital grounds were adjoining the county farm, and the lands of the appellants adjoined the county farm, but were separated from them by a substantial fence. *Connell* applied to the committee of the county board having in charge the county farm for bark to cover the summer-house, and the committee directed him to get the bark from the timber standing on the county farm; and, previous to such direction from the committee, *Connell* had procured several small trees from the county farm, to make the frame of the proposed summer-house; and, after *Connell* received the permit of the committee to procure the needed bark from the timber on the county farm, he directed the respondents, or some of them, to go into the timber on the county farm where they had shortly before cut the trees to make the frame of the summer-house, and there procure the bark necessary to cover the summer-house. The particular man to whom this order was given, and the one who was to direct the others in getting the bark, knew where the trees had been cut on the county farm, and had helped to cut them. No other direction was given by the respondent *Connell* in regard to procuring the bark. The persons who were so directed to get the bark for the summer-house, instead of getting it on the county farm, crossed the fence between the county farm

and the appellants' lands and cut the bark on their lands, and the bark was brought upon the hospital lands.

The other defendants who cut or assisted in cutting the bark did not defend the action, but suffered a default. *Connell* denied the allegations of the complaint. The issue between the plaintiffs and *Connell* was tried by a jury, and they rendered their verdict in favor of the respondent *Connell*, and from the judgment entered in his favor the plaintiffs appeal to this court.

For the appellants there was a brief by *Austin, Runkel & Austin*, and oral argument by *W. H. Austin*.

They contended, among other things, that the persons who actually committed the trespass were the servants of the defendant *Connell*, were subject to his control, and were acting under his general orders, and he is liable for injuries to third persons resulting from their acts. Wood's Master & Servant, secs. 1, 7, 306; *McCoun v. N. Y. C. R. Co.* 66 Barb. 338; *Hill v. Morey*, 26 Vt. 178. It was his duty to take reasonable precautions to prevent them from ignorantly trespassing upon the property of others. *Smith v. Webster*, 23 Mich. 298; *Luttrell v. Hazen*, 3 Sneed (Tenn.), 20; *Armstrong v. Cooley*, 10 Ill. 509; Wood's Master & Servant, 633. The judgment should be reversed for instructions misleading the jury. *Thomas v. Thomas*, 7 Wis. 476.

For the respondent there was a brief by *E. G. Comstock*, attorney, and *Flanders & Bottum*, of counsel, and oral argument by *Mr. Comstock* and *Mr. Flanders*. To the point that the defendant *Connell*, being a public officer, was not the master of the inmates of the hospital, nor liable for their acts or negligence while acting under him, they cited 1 Addison on Torts, 30; 2 Thompson on Negligence, 817, 879, 897; *Dunlop v. Munroe*, 7 Cranch, 242; *Le Caux v. Eden*, Dougl. 594; *Smith v. Gould*, 61 Wis. 36; *Cunningham v. Bay State S. & L. Co.* 25 Hun, 210.

TAYLOR, J.   It is alleged by the counsel for the appellants that *Connell* sent the inmates under his charge into the woods to get the bark, without directing them to get it on the county farm; and some of those who cut the bark testified on the trial that the direction was general to go into the woods and get the bark; and, as the trees on the plaintiffs' land offered better bark, they cut the bark on their land.   On the part of *Connell* the testimony was that his direction was particular to get the bark on the county farm. This question was fairly submitted to the jury, and their verdict upon this point is conclusive in this court.

After the evidence was in, the defendant *Connell* requested the court to submit to the jury the following questions: "(1) Did the defendant *Connell* direct the parties by whom the bark was cut, or either of them, to cut the same on *Schrubbe's* land?   (2) Do you find for the plaintiffs against the defendant *Connell*, or in defendant *Connell's* favor?   (3) If you find against defendant *Connell*, at what sum do you assess plaintiffs' damages?"

The plaintiffs' counsel proposed the following additional questions, or as substitutes therefor: "(1) Did *Dr. Connell* direct these men to procure bark for use in the building of a summer-house?   (2) Did they while procuring such bark, and in the course of their employment, carelessly, negligently, or by mistake, trespass on the lands of plaintiffs to their injury?   (3) If you find for the plaintiffs, at what sum do you assess their damages?"

The learned counsel for the appellants allege as errors: "(1) The refusal to submit to the jury the special verdict requested by the plaintiffs; (2) the submission of the special verdict requested by the defendant without modification; (3) the rulings of the court as to the admission and rejection of evidence; (4) that portion of the judge's charge excepted to by the plaintiffs."

It does not seem to us that there was any error in refusing the first two questions proposed by the plaintiffs. Neither of them was questioned by the defendant. *Connell* undoubtedly did direct the men to procure bark for the summer-house, and it is equally clear that the other defendants negligently, carelessly, or by mistake trespassed on the plaintiffs' lands. The third proposition was submitted by the court.

The objection that it was error to submit to the jury the questions proposed by the defendant is equally unfounded. It was a pertinent question to submit to the jury whether the defendant *Connell* directed the parties, or either of them, to cut bark on the plaintiffs' land. Had that question been answered in the affirmative, the liability of the defendant would have been fully established. But it does not follow that if that question was answered, as it was, in the negative, the defendant *Connell* would not be liable for the trespass, and so the jury were fully instructed by the learned county judge. Although they answered the first question in the negative, they could not upon that finding alone find the second proposition in favor of *Connell*. Under the instruction of the court they might have answered the first proposition in the negative, and still have found generally in favor of the plaintiffs against the defendant *Connell*. We cannot think that, under the instructions of the court, the jury could have entertained the idea that, if they answered the first question in the negative, they must necessarily find in favor of the defendant *Connell* on the whole case.

The objection that the court erred in rejecting evidence as to the extent of the plaintiffs' damages could not have prejudiced the plaintiffs, as the jury have found that they were not entitled to recover any damages from *Connell*. The evidence offered by *Connell* showing why he desired to

Schrubbe and wife vs. Connell.

build a summer-house at the hospital may have been imma-
terial in the determination of the issues in the case, but we
do not think it could have prejudiced the plaintiffs.

The error assigned by the learned counsel for the appel-
lants, mostly relied upon, is that the court erred in instruct-
ing the jury. The learned county judge instructed the jury,
among other things, as follows: "The question for you is,
who did the injury? Because, if there is any liability in
the case as against any of these defendants, they must
either have done the injury themselves, or must have di-
rected it, and the injury has been done in consequence of
such direction. It is true, as a principle of law, that the
master is liable for the acts of his servants in the usual em-
ployment of his service. [But it cannot be claimed, I think,
in this case, that *Dr. Connell*, in the sense of the law as I
have stated it to you, can be considered the master of these
individuals that were under his care in the county poor-
house or county hospital, because in no sense could they be
considered his servants.] [They were sent there, of course,
by the proper authority, and the doctor is placed there by
the same authority to have charge of the institution, and
to administer to the ailments of the persons in his charge;
but I do not understand that he has any further authority
over the inmates of this institution than simply to enforce
the rules and regulations of the institution by which it is
governed.] [Aside from that, *Dr. Connell* might still be
liable in a case where he directly authorized this injury to
be done to the property of the plaintiffs; or, it being done,
he had afterwards acquiesced in the act, and recognized it.
The relation of master and servant would not be necessary
to exist in that event; but any person who commits a tres-
pass, or procures another to commit a trespass, is liable for
the injury that would result from such trespass.]

"In this case you are first to consider and inquire whether
the doctor authorized these persons, who it is claimed com-

mitted the injury, to do it. If you come to the conclusion that he did, then he is liable, together with those under him, for the injury that resulted. If you find he did not authorize it, or direct it to be done, but it being done by these individuals, and he knew it and afterwards recognized or countenanced it, or directed either of his co-defendants to cut bark on the hospital grounds, if he knew or had good reason to believe that the persons so directed did not know the line dividing the plaintiffs' land from the county·farm, it was his duty to so direct as to such line, and, failing to do so, they crossed upon the plaintiffs' land, and did the injury complained of; in either case he would be just as liable as if he had originally directed it.

" In the light of the law as I have given it to you,— and my attention has been called to the fact, by the counsel for the plaintiffs, to direct more specifically upon that subject,— that if the doctor directed the persons to go directly upon the land, and to do the injury which was done there in taking the bark from those trees, then of course you have to answer that question in the affirmative, and without hesitancy. But I charge you further, as to the law, that a person may not only direct, but if he assents, countenances, or upholds an injury after knowing it has been done, he then becomes a trespasser from the beginning, and is just as liable in that view of the case as if he had originally directed the injury to be done."

The parts of the charge inclosed in brackets were excepted to by the plaintiffs.

We do not think the court erred in his statement that the inmates of the hospital, simply as such inmates, did not hold the relation of servants to the superintendent, or that the superintendent bore the relation of master to them, within the ordinary meaning of these terms. And the court having at the same time instructed the jury that if the superintendent undertook to direct them to do any act, and they

did it, and thereby an injury resulted to another, then he would be liable for such injury; or if, by reason of any carelessness on his part in directing them to do such act or acts, the inmates, so carelessly directed, did an injury to another, he would be liable for such injury,— was sufficiently favorable to the plaintiffs.

It seems to us that the case was fairly submitted to the jury, and we cannot say that the evidence fails entirely to sustain their verdict.

*By the Court.*— The judgment of the county court is affirmed.