## WILSON *v.* HALEY LIVE STOCK COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 332. Submitted March 30, 1894. — Decided April 16, 1894.

A defendant who proceeds to introduce testimony, after denial of his motion for a verdict in his favor on the close of the plaintiff's evidence in chief, thereby waives his exception to that denial.

A count in trespass *de bonis asportatis*, for the taking and detaining of personal property, can only be supported on the theory that plaintiff was either its owner, or entitled of right to its possession at the time of the trespass complained of.

In an action of trespass *de bonis asportatis* the plaintiff cannot recover as upon a count for money had and received, at least without an amendment of the complaint.

Where a cause of action is not proven, not merely in some particular, but in its entire scope and meaning, the courts treat it, not as a case of variance merely, but as an entire failure of proof.

THIS was an action by the Haley Live Stock Company against Wilson and five others to recover damages for the forcible seizure on July 27, 1888, of 700 head of cattle, and the extortion from the plaintiff of $12,725.50 as a condition precedent to the defendants surrendering possession of the cattle to the plaintiff.

The answer of Wilson and Breeze, two of the defendants, denied the incorporation of the plaintiff, as well as all the allegations of the complaint, and set up in defence that Wilson, as treasurer of Routt County, and Breeze as his assistant, seized these cattle under a warrant for taxes for the year 1884 against one Ora Haley, by which warrant defendant Wilson was commanded to make the said sum of $12,725.50 out of the personal property of Haley, and by virtue whereof he distrained upon these cattle, and detained the same from July 27 to August 21, when Haley voluntarily paid the amount due. During this time, defendant Wilson was enjoined by Haley from selling them, and the cattle were properly cared for and in better condition than when seized. A similar answer was filed by the other defendants.

Upon the trial it appeared that articles of incorporation of the Haley Live Stock Company, under the laws of Iowa, signed by Ora Haley and Samuel Hass, were filed for record in the county recorder's office of Pottawattamie County, Iowa, on July 24, 1888; in Carbon County, Wyoming, on July 30; and in Routt County, Colorado, on August 10; and in the office of the Secretary of State of Iowa on August 29, though nothing appears to have been filed in the office of the Secretary of State of Colorado. The articles provided for a capital stock of $300,000, divided into 3000 shares; that the corporation should begin business on August 1, 1888, and that Haley should be superintendent and manager of the company.

The cattle were seized on July 27, and released on August 21, upon payment of $12,725.50. At this time Wilson, as treasurer, executed the following receipt:

" YAMPA, ROUTT Co., COLO., *Aug.* 21, 1888.

" Received of Wilson Rankin for Ora Haley a certified check of Frank X. Aicher, on the German National Bank of Denver, Colorado. . . . This payment, it is understood, is paid in full settlement for the taxes of Ora Haley for the year 1884 under protest, and to release cattle now distrained for said taxes."

Haley testified that the Haley Live Stock Company became the owner of these cattle about the 24th of July by purchase from one Timothy Kinney; that Haley organized the company with a capital stock of 3000 shares, of which he owned 2990, the remaining ten shares being owned by four others; that the consideration for the cattle "was somewhere near the capital stock of the corporation;" that he, Haley, originally owned the cattle and had sold them to Kinney for about $300,000, taking his note and a chattel mortgage for the amount; that subsequent to this seizure Kinney brought suit in equity to enjoin the sale of the cattle for the taxes, upon the hearing of which suit both Haley and Kinney testified that the cattle were Kinney's property at the time of the seizure; that the sale to Kinney was *bona fide;* but that it was understood from the beginning that just as soon as the company was formed it was to take the property, Haley being advised "that that was a better method to get a corporation and have the property conveyed to it from a third party;" that the cattle were transferred to the company for the purpose of litigating the taxes in the Federal court. Haley further testified that "the minute the corporation had formed and was in shape to acquire title to it, it was the understanding between Hass, Kinney, and myself that that property was to be the property of the Haley Live Stock Company again."

" Q. Then the delivery was a mental operation, was it not?

" A. Yes; I expect it was.

"Q. You heard your affidavit read, made on the 4th of August, in which you testified that that property belonged to Timothy Kinney and was then in his possession. Was that true or was it false ?

"A. Well, it was. He was one of the possessors. There had been no formal delivery of the property ; only this understanding with the corporation."

It further appeared that, about 1885, he obtained an injunction against the collection of this tax, which was dissolved, that he then obtained a second injunction, which was dissolved by the Supreme Court, and the suit dismissed, *Breeze* v. *Haley*, 10 Colorado, 5 ; that he then obtained a third injunction, which was again dissolved, and the suit dismissed, *Breeze* v. *Haley*, 11 Colorado, 351 ; that he thereafter obtained a fourth and a fifth injunction, both of which were dissolved by the District Court of Arapahoe County, Colorado ; that he took one of these cases to the Supreme Court of the United States, *Haley* v. *Breeze*, 144 U. S. 130 ; and that he obtained a release of the cattle under all these injunctions, except the last one.

The testimony of Wilson Rankin for the plaintiff was to the effect that he was in charge of the cattle at the time they were seized ; that at the time of the payment he demanded a receipt in the name of the Haley Live Stock Company, which was refused, and a receipt taken in the name of Haley ; that at the time of the seizure he was working for Kinney and knew nothing about the Live Stock Company ; that he got a check from Haley, and that the first time he ever mentioned to Wilson or any one else the name of the company was when he asked for the receipt.

Defendants offered testimony tending to support the allegations of their answer ; produced the tax roll in evidence ; and showed that the Live Stock Company was never heard of by them until the day the taxes were paid and the cattle released.

The court submitted to the jury the question whether the money was paid by the Haley Live Stock Company or by Mr. Haley himself. The jury returned a verdict for $5266.92, upon which judgment was entered, and defendants sued

out this writ of error, assigning as error certain questions arising upon the admission of testimony and the charge of the court.

*Mr. Daniel E. Parks* and *Mr. H. B. Johnson* for plaintiff in error.

*Mr. W. T. Hughes* for defendant in error.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

We shall not find it necessary to dispose of all the errors assigned to the action of the court below, as many of them are not properly presented by the record.

1. Upon the conclusion of the plaintiff's testimony, defendants moved the court to direct a verdict in their favor upon several grounds, among which were that the organization of the plaintiff corporation was fraudulent, and solely for the purpose of invoking the jurisdiction of the Federal court; that the property in question was never conveyed to the plaintiff until after the trespass was committed, and therefore it could not sue for the same; that the pretended conveyances from Haley to Kinney and from Kinney to plaintiff were without consideration and fraudulent; and there had been no delivery of the property to the plaintiff prior to the alleged trespass. The court denied this motion, and the defendants excepted. They did not, however, stand upon their exceptions, but proceeded to introduce testimony in their own behalf, and thereby, as we have repeatedly held, waived their exceptions. *Bogk* v. *Gassert*, 149 U. S. 17, 23. Nor did they renew their motion upon the conclusion of the entire testimony, as they might have done. This disposes of the third assignment of error, "that the court erred in overruling the motion of the defendants, made at the conclusion of the evidence of plaintiff, to instruct the jury to find a verdict for defendants." As the fourth, fifth, and sixth assignments are only to the opinion of the court in denying such motion, they must share the fate of the third. In addition to this, how-

ever, the reasons given by the court for its action upon the principal motion are not the proper subjects of exception. If the exception was improperly overruled, the reasons given by the court for its action are of no consequence.

2. There was an exception taken, however, to the following extract from the charge, which is also assigned as error, namely: "That if you believe from the evidence that this money was paid over by the Haley Live Stock Company, and not by Mr. Haley himself, then the plaintiff would have the right to recover it back as having been exacted under circumstances which showed no authority upon the part of Mr. Wilson to get it."

This charge must be taken in connection with the pleadings in the case, and can only be justified upon the theory that, consistently with the allegations of the complaint, plaintiff had a right to recover, if the money paid to obtain the release of the cattle was paid by the Haley Live Stock Company, and not by Mr. Haley himself. It is true that this portion of the charge was excepted to upon the ground that it assumed the invalidity of the tax proceedings; but, as it went to the foundation of the action, we think it may be construed as raising the same question that was raised at the conclusion of the plaintiff's testimony, viz., the right to recover upon the allegations of the complaint, and the admitted facts of the case.

The gist of the complaint is contained in the fifth paragraph, which is as follows: "That on or about July 27, 1888, the defendants, by force and arms, seized and took from the plaintiff about seven hundred head of beef cattle, which were bunched up and were being driven to market by plaintiff, and that, after seizing and taking from plaintiff said cattle, defendants drove said cattle great distances, and kept them bunched together, and greatly injured said cattle, and caused them to deteriorate and lose flesh, until on August 21, 1888, plaintiff was compelled to pay defendants a sum demanded by them of plaintiff, to wit, $12,725.50, as a condition precedent to defendants surrendering possession of said cattle to plaintiff."

This is, in its nature, a count in trespass *de bonis asportatis*,

for the taking and detaining of personal property, and can only be supported upon the theory that plaintiff was either the owner of the cattle, or entitled of right to the possession of them at the time of the trespass complained of. 1 Chitty on Pleading, 189.

The allegation that plaintiff was compelled to pay defendants a large sum of money to obtain the release of the cattle is, to all intents and purposes, an allegation that plaintiff suffered this amount of damages by reason of the unlawful seizure of its cattle, in addition to the damages suffered in driving said cattle great distances, keeping them bunched together, and causing them to deteriorate and lose flesh. Now, there is no evidence which would justify a jury in finding that plaintiff was the owner or entitled to the possession of the cattle until some time after the 27th of July, when the trespass is alleged to have been committed. By the articles of incorporation of the Haley Live Stock Company it was not authorized to begin business until the first day of August, 1888; and although these articles were filed in the county recorder's office of Pottawattamie County, Iowa, as early as July 24, they were not filed for record in the State of Colorado until August 10, fourteen days after the trespass was committed. In addition to this it appears that, in the suit in replevin instituted by Kinney against these same defendants, Wilson and Breeze, to obtain possession of these cattle, Haley, purporting to act as agent for Kinney, made affidavit on August 4 that Kinney was the owner of and was then lawfully entitled to the possession of the cattle in question.

Notwithstanding this, Haley swore that the Live Stock Company, of which he himself was practically the sole incorporator, became the owner of these cattle on the 24th of July, by purchase from Kinney, though he admits there was no formal delivery or transfer of possession. The truth seems to be that the company was organized for the sole purpose of bringing this suit as a non-resident; that Haley swore that the cattle became the property of the company on about July 24 simply because the company filed its articles of incorporation in Pottawattamie County, Iowa, upon that day; that no

purchase was ever actually made of these cattle by the company, at least until long after the date of the seizure, and, as Haley admits, the delivery and sale were only a mental operation, and if the company ever took title at all, it was long after the date of the alleged trespass.

Clearly there was nothing in any of these transactions that could give to the company the right to sue for the trespass committed in the seizure of these cattle on July 27. The Circuit Court held that the plaintiff had not acquired the title or possession at that time, and hence could not maintain an action for the seizure of the cattle and the loss accruing from that act. The court was, however, of opinion that if it could assume that the plaintiff paid the money for Kinney, or whoever was the owner of the cattle at the time, to secure the release of them, with the view of acquiring property in them, it might maintain an action for the money paid for that purpose; that the fact that the plaintiff was a stranger to the proceeding to collect the taxes was not material; and that, if the taxes were void, a stranger paying the amount for the use of the person against whom it was levied would be able to recover the money. We concur in its opinion that the plaintiff could not maintain an action for the trespass; but we think it was in error in holding that the plaintiff might continue the action for the recovery of the money paid to obtain the release of the cattle. As before stated, this was a mere item of the damages occasioned by the seizure. The gist of the action was the trespass, and if the plaintiff was not able to maintain that action, it fell to the ground, and carried with it all the damages incidental thereto. We are not called upon to determine whether, under the Code of Civil Procedure of the State of Colorado, the court might or might not have permitted the action of trespass to be turned into one for money had and received, and the plaintiff to recover upon the theory that the cattle had, before the payment of the money, become its property, and that such payment was made for the purpose of obtaining its release, and was, therefore, not voluntary. It is sufficient to say that we know of no system of pleading which enables a party to declare in trespass *de bonis asportatis,*

and without at least an amendment of his complaint, recover as upon an account for money had and received.

By section 78 of the Colorado Code of Civil Procedure it is provided that " if, upon the trial of an action before the court or jury, the evidence shall vary from the allegations of the pleadings, and either party is surprised thereby, he shall be allowed, on motion and showing cause therefor, and on such terms as the court may prescribe, to amend his pleadings to conform to proofs." No such amendment, however, was made in this case. While, undoubtedly, under the system of code pleading, a technical variance between the allegations and the proof is not deemed material, unless the adverse party is prejudiced thereby, still, where a cause of action or defence is not proven, not merely in some particular, but in its entire scope and meaning, it is treated by the authorities of those States, not as a case of variance merely, but as an entire failure of proof. See *Volkening* v. *De Graaf*, 81 N. Y. 268; *S. C.* 44 N. Y. Super. Ct. (12 J. & S.) 424; *Decker* v. *Saltzman*, 59 N. Y. 275. In *Degraw* v. *Elmore*, 50 N. Y. 1, it is held distinctly that the code does not authorize a recovery where the complaint alleges facts showing a cause of action in tort, by proving on the trial a cause of action in contract. To the same effect are *Ross* v. *Mather*, 51 N. Y. 108; *Walter* v. *Bennett*, 16 N. Y. 250; *Belknap* v. *Sealey*, 14 N. Y. 143; *Bernhard* v. *Seligman*, 54 N. Y. 661; *Barnes* v. *Quigley*, 59 N. Y. 265; *Farmer* v. *Cram*, 7 California, 135.

If in fact the cattle continued to be the property of Kinney or Haley up to the time the money was paid, it is difficult to see upon what theory a recovery could be permitted at all, since in such case the payment by the Haley Live Stock Company would be wholly voluntary. *Lamborn* v. *County Commissioners*, 97 U. S. 181, 185. If, upon the other hand, the cattle had become the *bona fide* property of a *bona fide* corporation, it is possible that such corporation might sustain an action for money paid for the release of its property, even though it were organized for the purpose of carrying the litigation into the Federal courts. *Seeberger* v. *Castro, ante,* 32. The difficulty in this connection is to find any tangible evi-

dence that the Live Stock Company paid this tax, or had any money with which to pay it. The proof was that Haley borrowed of one Aicher the money to pay these taxes, giving him his own notes for the amount, while Aicher gave to him a cheque which he endorsed personally and handed to the county treasurer. The name of the Live Stock Company was not used in the transaction, and at this time it had opened no books, had no money, and no account at a bank. In fact, the Haley Live Stock Company seems to have been a mere *alias* for Haley. The fact that Haley may have intended to sell the cattle as the property of the company and pay his note to Aicher from the proceeds, does not put the company in the position of an original payer.

We think the court was in error in submitting to the jury the question who paid these taxes, both because the pleadings did not justify it and because there was no proper evidence that plaintiff paid them. The judgment must, therefore, be

*Reversed, and the case remanded for further proceedings in conformity with this opinion.*