COLUMBIA, N. & L. R. CO. v. MEANS.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

No. 543.

1. ERROR—MATTERS REVIEWABLE—WAIVER.

A defendant waives the right to assign as error the overruling of a motion to direct a verdict in his favor made at the conclusion of plaintiff's evidence, where he afterward introduces testimony, and the motion is not renewed.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 983.]

2. CARRIERS—ACTION FOR INJURY TO PASSENGER—INSTRUCTIONS.

Instructions given by the court in an action by a passenger against a railroad company to recover for a personal injury considered, and *held* to have fully and fairly stated the law applicable to the case as made by the evidence.

In Error to the Circuit Court of the United States for the District of South Carolina.

D. W. Robinson, for plaintiff in error.

J. E. McDonald (P. H. Nelson, on the brief), for defendant in error.

Before GOFF, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

McDOWELL, District Judge. This was an action at law for damages brought by the defendant in error—to be hereinafter spoken of as the plaintiff—against the plaintiff in error, which resulted in a verdict and judgment for $1,500 in favor of the plaintiff. The errors assigned relate only to refusals by the trial court to give sundry instructions asked for by the defendant company.

One assignment is that the trial court overruled a motion by the defendant that the jury be instructed to find for the defendant. This motion was made at the close of the plaintiff's testimony. After the ruling in question was made, the defendant company introduced evidence, and did not renew the motion after the close of the testimony. Under such circumstances, the action of the trial court cannot be assigned as error. Grand Trunk Railway v. Cummings, 106 U. S. 700, 27 L. Ed. 266; N. P. R. Co. v. Mares, 123 U. S. 710, 713, 8 Sup. Ct. 321, 31 L. Ed. 296; Robertson v. Perkins, 129 U. S. 233, 236, 237,

9 Sup. Ct. 279, 32 L. Ed. 686; Wilson v. Haley Co., 153 U. S. 39, 43, 14 Sup. Ct. 768, 38 L. Ed. 627.

The remaining assignments of error, with the exception of the last two, to be considered hereafter, really raise no question for consideration here, except to ascertain if the charge, as given, fairly and fully instructed the jury as to the law of the case.

The plaintiff in October, 1898, intended to go from Columbia to Schleys on the defendant's train. The train was a mixed one, made up of freight cars and one passenger coach. The time of departure of the train seems to have been somewhat irregular, dependent on the arrival of a passenger train from Laurens. The train from Laurens was scheduled to arrive at 3:55 p. m., but actually arrived on the day in question at 4:17. The time of the arrival of the plaintiff at the depot is not accurately shown, but the testimony tends to show that he reached there not very long before the probable starting time. At least three and perhaps five other passengers were in the coach at the time he entered it, which was before the coach had been coupled to the freight cars. The plaintiff did not purchase a ticket. He says he asked the ticket agent for a ticket, and was told that he need not get one, but could pay his fare to the conductor. The ticket agent, not pretending to remember the occurrence—the trial was in January, 1904—testified that it was his custom to sell tickets to all who applied. The place where the coach was at the time the plaintiff entered it, and at the time he was injured, is in some doubt. In his testimony in chief, the plaintiff said the coach was north of Gervais street. If so, it was probably 200 feet from the place where passengers usually entered it. On rebuttal the plaintiff and Mr. Ryan stated positively that the car started on its journey from the very place where it stood when the plaintiff entered it. Dr. Ensor, who entered the car before the plaintiff, testified in chief that the car was at the Union Depot when he entered it. And Moffett, the car porter, testified that this coach, which came to Columbia in the forenoon, was always left opposite the Union Depot. The entire testimony goes to show that this coach, prior to being coupled to the freight train, usually stood near the point from which it started, but that there was no fixed position in which it was invariably placed. It seems probable that the car was at or very near the place where it was usually boarded by passengers when the plaintiff entered it. The car appears never to have been locked—in fact, there was no key— and the reason given for this custom is that the car, while left standing in the interval between its arrival in the forenoon and its departure in the afternoon, was under the observation of the car inspector. It seems that it was the custom to pull or back the train to which this car was coupled so as to bring the passenger car, if not already in place, in front of the waiting rooms, and the conductor would then go to the waiting rooms and announce that the train was about ready to leave. The plaintiff knew that the passenger car had not been coupled when he entered it. After being in the car for some minutes, he decided to change his seat; and, in doing so, he was standing up in the aisle at the moment when the freight train was backed against the coach. The shock was extremely violent—unusually and inexcusably so, if the train crew knew or should have known that passengers were in

the coach. The shock threw the plaintiff down, and injured him considerably, and for this he brought this action.

The charge given the jury by the trial court is as follows:

"This, as you have seen, is an action for damages against the defendant for injuries received by plaintiff, claiming to have been a passenger on the train of defendant. There are three points on which you must be satisfied from the evidence:

"(1) Railroad companies engaged in the transportation of passengers for hire are common carriers, and, in the course of their employment, are required to exercise as to passengers the utmost human care and foresight. In the protection of their passengers they are bound to exercise more than ordinary care; they must exercise extraordinary care and employ all reasonable skill and diligence—remembering always that the responsibility of a carrier of passengers is not, like that of a carrier of goods, a responsibility at all events, except for the acts of God and the public enemy, but a responsibility modified by this fact: that passengers are reasonable beings, exercising their own will, so that the carrier, though bound to take the highest care of the passenger, is not bound by any act of imprudence on the part of the passenger either violating proper regulations, or exposing himself imprudently to danger. Was the plaintiff a passenger on the train? As common carriers of passengers, railroad companies are required to carry, subject to reasonable regulations, all who offer. The purchase of a ticket is not necessary to constitute one as a passenger. The relation of passenger to the carrier ordinarily arises when a person intending to take passage presents himself at a proper time (a reasonable time before the train is scheduled to start), in a proper place (the usual place for passengers to enter), and then and there enters the train, with no notice to the contrary. That is the law. Now, you apply the facts of this case. Recall these as testified before you, and say: Where was the passenger coach lying on the day of the accident when the plaintiff entered it? Was it at the usual place for the passengers to enter it? Was it open, so as to permit passengers to enter it? Did passengers so enter it with no warning from any quarter to the contrary? If you answer these questions in the affirmative—if the facts be these—then a person entering the passenger car under these circumstances stands to the railroad company in the relation of a passenger, and is entitled to protection against negligence of the railroad company and of its servants.

"(2) If you find that the plaintiff was a passenger, in the sense I have stated, you next inquire, was he injured by the negligence of the railroad company? You have heard the testimony on this point. Did that part of the train made up of freight cars come down on the passenger coach at unnecessary speed or with unnecessary violence? Did this speed or violence cause the fall of the plaintiff? Was that the proximate cause—the thing that caused the injury? And in this connection you must say whether the imprudence of plaintiff himself—his carelessness in being on his feet when the shock came—also caused the injury. If you find that the imprudence or carelessness of the plaintiff was one of the immediate causes of the accident, he cannot recover.

"(3) If you find that it was negligence on the railroad company for coming with unnecessary speed or unnecessary violence on the passenger coach, and that this caused the accident, with no imprudence or carelessness of the plaintiff contributing to it, your next inquiry is, what damages you will give him. There is no place here for punitive or exemplary damages. All that you can do is to compensate him for his loss of time, and for the pain he suffered, and for such diminution of his capacity to work coming directly from this accident, and for such private consequences, if any, he may suffer; estimating in money what you think he ought to have."

It would involve unnecessary and fruitless labor to discuss the requests for instructions offered by the defendant and refused. It is clear that the charge fully and fairly instructed the jury as to the law on every debatable question in the case.

The ninth and tenth requests were as follows:

"If the jury believe from the evidence that at the time the plaintiff was injured the train was under the charge and control of the Atlantic Coast Line Railroad, that the defendant herein would not be liable for such injury to the plaintiff, and it would be the duty of the jury to find for the defendant.

"The only evidence on this point is that of the witness Childs, and, if the jury believe the testimony of that witness, they should find for the defendant."

These assignments of error are without merit. The record puts beyond any question the fact that the freight train had been "made up" and put in charge of the defendant's servants before the injury. The engineer, Weatherby, and conductor, McManus, who backed the freight train against the passenger car, were, as was testified by numerous witnesses for the defendant, the employés of the defendant. The following from the testimony of W. D. Graham, a witness introduced by the defendant, must have been overlooked by counsel for the defendant:

"Q. Are you familiar with the custom in making up those freight trains in 1898—those mixed freight and passenger trains? A. Yes, sir; I was on it a good deal. Q. Tell us what your custom was in making it up? A. We did not have anything to do with the making up of the trains. The box cars was made up in the Coast Line yard, and were put on a certain track, and we pulled it on our main line and backed in on the coach on the outside of the shed."

Also the following from the testimony of W. S. Fowler, another witness for the defendant, who was a conductor of the defendant's at the time of the injury:

"Q. How was the train made up in the afternoon? A. It was made up down in the freight yard, and then the C., N. & L. [Columbia, Newberry & Laurens] engine coupled it and took it in on the road before leaving. Q. How long before leaving did you ordinarily do that? A. Sometimes might be delayed in the yard. If we was on time, might be 25 or 30 minutes before leaving. Q. What did you do with the train after you had coupled it to this coach? A. We took it over Gervais street to clear the crossing until leaving time."

We find no error, and the judgment below must be affirmed.