KER v. BRYAN.

(Circuit Court of Appeals, Fourth Circuit. July 28, 1908.)

No. 808.

1. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

The wrongful possession of property by a trespasser does not oust the possession of the rightful owner so as to devest the latter of his right to maintain an action based on the subsequent unlawful entry of another than the original wrongdoer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trespass, § 62.]

2. ADMIRALTY—ATTACHMENT—PROCESS—VALIDITY—AUTHORITY TO ISSUE.

A monition and order for attachment issued in a suit in rem in admiralty, to which the name of the clerk and the seal of the court were affixed by a person temporarily in charge of the office, but who was neither clerk nor deputy, was void, and possession of the vessel taken by the marshal thereunder was that of a mere trespasser.

3. TRESPASS—ACTION—DEFENSES.

While a marshal was in possession of a vessel under a void process, defendant, as collector of the port, placed and kept an inspector on board for the purpose of detaining the vessel under orders from the Secretary of the Treasury. Held, that the unlawful possession of the marshal constituted no defense to an action by the owner of the vessel against defendant to recover damages for her alleged unlawful detention.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trespass, § 62.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

J. P. K. Bryan (M. C. Butler, on the brief), for plaintiff in error.
Ernest F. Cochran, U. S. Atty. (T. W. Bacot, Asst. U. S. Atty., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge. This is a civil action brought in the Circuit Court of the United States for the District of South Carolina, at Charleston, originally by William W. Ker, a citizen and resident

of the state of Pennsylvania, against George D. Bryan, a citizen and resident of the state of South Carolina, collector of the port of Charleston. Since the commencement of the action, William W. Ker has died, and Roxana S. Ker, executrix of his last will and testament, has been made party plaintiff. In the action the plaintiff in error here, who was the plaintiff below, seeks to recover damages from George D. Bryan, collector of the port of Charleston, the defendant in error here, who was the defendant below, for the alleged wrongful seizure and detention of the American steamship Laurada, a merchant vessel of the United States of the burden of 899 tons, registered at the port of Philadelphia, which said steamship was owned by the plaintiff. Plaintiff's cause of action is set forth specifically in the third and fourth paragraphs of the complaint filed, which are as follows:

"(3) That on the 16th day of November, 1895, the said steamship Laurada being in the port and harbor of Charleston, proceeding, with her officers and crew on board, in the due fulfillment of her freight engagements as a merchant vessel of the United States, the said George D. Bryan, claiming to act as collector of the port of Charleston, and in the name of the United States, unlawfully seized, and caused to be seized, the said steamship Laurada, and under an alleged authority and direction of the government of the United States unlawfully and wrongfully detained the said steamship Laurada at the Custom House Wharf in the port and harbor of Charleston, in the district of South Carolina, and refused to allow said steamship to proceed in the due fulfillment of her freight engagements for the space of 21 days, to wit, from the 16th day of November, 1895, to and inclusive of the 6th day of December, 1895.

"(4) That all such acts and doings of the said George D. Bryan, claiming to act as collector of the port of Charleston, and under an alleged authority and direction of and in the name of the government of the United States, were without warrant of law, and all such alleged authority and direction of the United States government were null and void."

And the plaintiff thereupon asked damages in the sum of $5,000. The defendant, in his answer, sets up substantially, only two defenses; the first being outlined in paragraph "Third" under the head of "First Defense" and the second in paragraph "Third" under the head of "Second Defense." These two paragraphs are as follows:

"(1) That he denies each and every other allegation in the said complaint contained, except as hereinafter stated. That true it is that, acting under instructions received from the Secretary of the Treasury of the United States of America, this defendant caused one of the inspectors to go on board the Laurada and formally take possession of charge of said vessel, and that he kept her in his custody and under his control for 21 days, but this defendant was then informed and verily believes that the said Laurada was about to depart from the United States with arms, munitions of war, and men, constituting a military expedition, and was intended by her owners to commit hostilities upon the subjects and property of the island of Cuba, a colony of the kingdom of Spain, with which the United States was at peace, and that there was probable cause for such detention of the said vessel.

"(2) That true it is this defendant, acting under instructions from the Secretary of the Treasury of the United States, caused the steam vessel Laurada to be formally detained by placing an inspector on board; but this defendant alleges that no injury or damage resulted to the plaintiff thereby, the said Laurada then being in the custody of the marshal, under a libel issued out of the District Court for the district of South Carolina, in the suit of John E. Ker & Co. against the steamship Laurada, that said vessel was seized under said libel on the 15th day of November, A. D. 1895, and was not

released by him until the 18th day of December, A. D. 1895, and this defend-
ant submits that any damages sustained were by reason of such detention,
and did not result from the act of this defendant."

We will consider, in disposing of this case here, only the last
defense, above stated, for it was upon the testimony and facts in
relation thereto that the trial judge directed a verdict for the defend-
ant. The facts are, substantially, as follows: The steamship Lau-
rada, which was owned by the original plaintiff in this action, W. W.
Ker, had anchored in the port of Charleston, S. C., and whilst there,
on the 15th of November, 1895, John E. Ker and John E. Ker, Jr.,
partners doing business under the firm name of J. E. Ker & Co.,
at the city of New York, and at Montego Bay, and other places in
the island of Jamaica, filed a libel and complaint in the District
Court of the United States, at Charleston, against the steamship Lau-
rada, her engines, boiler, tackle, etc., and against all persons inter-
vening for their interests therein and against Samuel Hughes, the
master of the vessel, wherein the said libelants sought to recover
damages against the said Laurada, based upon the alleged violations
of the terms of a charter party, set forth in the libel. On the date
of the filing of the libel, to wit, the 15th day of November, 1895,
a monition and order for attachment was issued in the name of the
President of the United States of America and directed to the marshal
of the district of South Carolina, commanding the marshal to at-
tach the said ship or vessel, her tackle, etc., and detain the same in
his custody until the further order of the court respecting the same
and give due notice to all persons claiming the same, or knowing or
having anything to say why the same should not be condemned and
sold pursuant to the prayer of the libel, and that they be and appear
before the court, etc. This monition and order for attachment was
signed by the proctors for the libelants and upon its face appears
to have been issued by E. M. Seabrook, clerk of the District Court
of the United States of South Carolina, per Julius Seabrook, deputy
clerk, to which was also affixed the seal of the United States Dis-
trict Court of South Carolina.

The testimony which was introduced at the trial, and which was
uncontradicted, shows: That E. M. Seabrook, the clerk of the
United States District Court, at Charleston, on the 15th of Novem-
ber, 1895, the date on which this monition and attachment purports
to have been issued, was out of the district, in Atlanta, Ga., attending
his father, who was sick, and that Julius Seabrook, a brother of the
clerk, and who was deputy clerk, was also on that date in Atlanta,
with his brother, attending the sick father; that the names of the
clerk and the deputy clerk were written by a younger brother by the
name of J. D. Seabrook, and the seal which appears upon the paper
was affixed by him. It is further shown that J. D. Seabrook was in the
clerk's office at the instance of the deputy, Julius Seabrook. The
father being in Atlanta sick, the clerk, E. M. Seabrook, had gone
to attend him, and Julius Seabrook, the deputy, was unexpectedly
called by his brother to come to Atlanta, and in this situation he
asked the other brother, J. D. Seabrook, to stay in the office of the
clerk and file papers, if any came in, and the last-named, under

these circumstances, wrote the names of the clerk and deputy clerk, and affixed the seal to this monition and attachment. He had never been appointed or qualified as deputy clerk, and, so far as appears from the record, had not undertaken to act as such in any instance, except in the issuance of the monition and attachment in question.

After some intermediate proceedings in the libel case, it came on to be heard on the 5th of December, 1899, when the following decree was entered:

"John E. Ker & Co. v. Steamship Laurada.

"Libel in Rem.

"This cause came on to be heard before the District Court of the United States for the District of South Carolina, on the records, pleadings, and proof herein. Whereupon, it is now ordered, adjudged, and decreed that the libel herein be dismissed for want of jurisdiction of the court in rem in this cause and process herein being void."

It further appears in the record of the libel proceeding that on the 20th of November, 1895, the counsel for the Laurada addressed the following letter to George D. Bryan, collector of customs, at Charleston, S. C.:

"We are informed that you are detaining the steamer Laurada on behalf of the United States. We are desirous that she shall forthwith proceed and therefore beg to inquire if she may do so now, as we do not wish to advise in conflict with the instructions of the government of the United States. We request an early reply."

The collector, who is the defendant below and the defendant in error here in the present action, on the same date returned this answer:

"Your favor of this instant at hand, and in reply I beg to say that you are correctly informed in that I am detaining the steamer Laurada on behalf of the United States. I could not permit her to proceed, as indicated in your letter, as my instructions are to detain her."

At the close of the testimony the trial judge, in response to a request of the counsel for defendant, directed a verdict for the defendant, to which counsel for the plaintiff duly excepted. A judgment was entered against the plaintiff in accordance with the verdict, to which the plaintiff also excepted, and the case is before us upon these exceptions. It is unnecessary, in our opinion, to treat severally of the errors assigned by the plaintiff. It is sufficient to note the legal proposition upon which the court based the decision. We quote from the instructions given by the court the following:

"As a mere question of law it seems to me that the plaintiff has no case, that the ship was not in the possession of the defendant collector of the port, but was in the possession of the marshal, and it appeared to be lawful process; and if she was in the possession of the marshal, then she could not have been in the possession of the defendant (collector), and the defendant (collector) therefore is not responsible. * * * The simple question here is whether or not the marshal had possession; if the marshal had possession, then the collector did not. Undoubtedly, upon the proof, the marshal did have possession of the ship, and the government gets out in that way."

These instructions were severally and duly excepted to by the plaintiff's counsel, and the case is before us to determine whether or not there is error.

The collector of the port of Charleston, as has been stated, sent his inspector aboard the Laurada the day after the marshal took her in custody, and the possession of the two was simultaneous from that time until the vessel was released by the collector. Thus, the sole question is whether the possession of the marshal first obtained protects the collector in this action which is brought against him by the owner of the ship to recover damages for an alleged trespass. The principles of law in regard to actions of trespass are well settled, and the rule is the same both as to realty and personal property. The person who undertakes to maintain his action must, at the time when the act which constitutes the alleged trespass is committed, either have the actual possession in him of the thing which is the subject of the trespass, or must have a constructive possession in respect to the thing being actually invested in him, with the right to immediate possession. This latter doctrine is well declared in Wilson v. Haley Live Stock Company, 153 U. S. 39, 14 Sup. Ct. 768, 38 L. Ed. 627, in which the court holds:

"A count in trespass de bonis asportatis, for the taking and detaining of personal property, can only be supported on the theory that the plaintiff was either its owner or entitled of right to its possession at the time of the trespass complained of."

In the final disposition of this case by the trial court, no question was made as to the ownership of this vessel by the testator of the present plaintiff, nor is there any presented in the arguments or briefs submitted to this court. Then the original plaintiff being the owner, did he at the time have the possession of his vessel, or did he have the right to immediate possession by reason of the wrongful custody of the marshal? In other words, was the marshal there as a trespasser? In disposing of the libel case, as is shown by the decree, which is incorporated above, the court declared that the process therein was void. Counsel for the defendant makes the point that this decree was by consent and was inter alios acta, and that it therefore can have no effect upon the present case. So far as the rights of the parties to that particular action are concerned, we admit this position to be true; but this decree is not relied upon in that view here. It is only in support of the position that the process under which the marshal took custody of the vessel was void and therefore conferred no authority upon him to take possession of the ship. However, aside from this decree, the facts being admitted as to the circumstances under which the monition and attachment was issued, this court we think has the right to determine as to whether or not it was a void process, and in our opinion it was. The person who signed the name of the clerk and the deputy clerk, and affixed the seal of the District Court of South Carolina to the process, had no authority whatever to do these acts. He was not even an officer de facto, and, in our view the process which the marshal had, and under which he took custody of this vessel, had no more legal force and conferred no more legal authority than if it had been issued direct from the office of the proctors, without the intervention of the person who signed it and affixed the seal to it. With this conclusion, it necessarily follows that the custody of the marshal was wrongful.

He was aboard the ship, holding it in custody unlawfully. He was a trespasser. The wrongful possession of property by a trespasser does not oust the possession of the rightful owner so as to divest the latter of his right to maintain an action against the subsequent unlawful entry of another than the original wrongdoer.

In the case of Van Brunt v. Schenck, 11 Johns. (N. Y.) 377, it was held that:

"Where A.'s vessel is seized by B. under the United States internal revenue laws, and C., with the consent of B., makes use of the vessel, A. cannot maintain trespass, because B.'s possession was lawful, and A. was therefore not in possession at the time of C.'s trespass."

This is undoubtedly the law, and if the possession of the Laurada by the United States marshal, at the time the collector took possession, had been lawful, we would not hesitate to concur with the trial judge in his ruling that the action of trespass against the collector could not be maintained; but, as we have stated above, the possession of the marshal was not lawful, and therefore the right of property and the immediate right of possession was in the owner, and, if the collector took possession unlawfully or wrongfully, the owner can maintain his action against him, and it was error, in our opinion, for the trial court to hold that the possession of the marshal, under the circumstances, protected the collector and deprived the owner of the vessel of this right. We do not intend by this opinion to deprive the defendant of any right to contest the real ownership of the vessel, or to set up by way of defense the bona fides of his action in seizing the vessel, the probable cause which may have existed at the time, or any other legal defense. We only decide that the possession of the marshal does not shield the defendant, nor was it a legal ground upon which to direct a verdict against the plaintiff.

The judgment of the District Court of South Carolina is reversed, and the case is remanded for further proceedings in accordance with the views expressed in this opinion.

Reversed.