LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE v. MRS. BERTHA KING ROBERTSON, Executrix, etc.

Middle Section. February 5, 1927.

Petition for Certiorari denied by Supreme Court, February 4, 1928.

1. Trial. The right of a jury to find a special verdict is a common-law right.
      The right of a jury to find a special verdict is a common-law right, going back at least as far as 13 Edward 1. In the absence of any statutory provision upon the question, it is the option of the jury to return either a

general or special verdict, but the court may order a special verdict of its own motion.

2. **Trial. Special verdict may be returned by the jury in Tennessee.**

The statutes of Tennessee neither forbid nor make provision for the rendition of special verdicts by the jury and therefore by reason of the common-law right, juries in Tennessee may return special verdicts and the court has the right to require the jury to return a special verdict.

3. **Trial. A special verdict at law should in order to support a judgment pass upon every material issue of fact made by the pleadings.**

In submitting the issues to the jury upon which to find a special verdict, the court should submit all issues made by the parties.

4. **Trial. Where party does not complain that all issues are not submitted to the jury, there is no error.**

Where all of the issues in the case were not submitted to the jury for their special finding, but the parties consented that no other issues should be submitted to the jury held there was no error.

5. **Trial. Court may treat material uncontroverted facts as though found for the plaintiff.**

Where the issues submitted to the jury did not contain certain material facts which were uncontroverted, held it was proper in this case, for the trial court to treat material uncontroverted facts, or facts established by undisputed evidence as though found for the plaintiff, although not formally included in the verdict of the jury.

6. **Trial. The elimination of pleas which does not deprive the defendant of a valid defense is not reversible error.**

Where the defendant was subsequently permitted to file an additional plea which included every valid and material defense that defendant was attempting to present, by pleas which were stricken, held, if error, it was harmless error to strike the pleas.

7. **Appeal and error. Defendant must stand on its motion for directed verdict made at the close of plaintiff's evidence if it is to be urged on appeal.**

Where the defendant did not elect to stand upon its motion for a directed verdict made at the close of plaintiff's evidence, but after the motion was over-ruled, defendant proceeded to put on witnesses in its own behalf, it thereby waived the motion then made and can not complain on appeal of its over-rulement.

8. **Insurance. Evidence. Statement in proof of death required by insurance company in regard to the cause of death is not proof of the cause of death.**

Where an insurance company required a proof of death and in their form was a question as to the cause of death, held that this statement could not be used as proof of the truth of the statement.

9. **Insurance. Evidence. Proof of loss admissible in evidence to show insurance company acted in good faith.**

In an action on an insurance policy where the proof of loss stated that the party died by suicide and the proof of loss was offered in evidence, held that it was admissible for the purpose of showing that the company was justified in denying liability but was not admissible as proof of the fact that the party died by suicide.

10. **Trial. Instructions. Introduction of proof of death does not shift burden where there is already evidence in the case to overcome the prima facie case.**

In an action to recover on an insurance policy where the proof of death was offered stating that the deceased died by suicide, and the defendant asked an instruction, instructing the jury that the burden was shifted by the introduction of the proof of loss to the defendant to show that deceased did not die by his own act, and where at the time the doctor making

the proof of loss had testified that the statement was simply made from hearsay, held that the instruction was properly refused.

11. **Insurance. Evidence. Statement of one who was agent of beneficiary solely for purpose of transmitting the proofs of death to the insurer, that insured "died by suicide" is not binding on beneficiary.**

Where person acting as agent of beneficiary solely for transmittal of the proofs of death of insured to home office of insurer, stated in a letter to insurer that insured "died by suicide," and such statement was not made with the knowledge or upon the authority of the beneficiary, it was not competent evidence against the beneficiary in her suit on the policy.

12. **Insurance. Questions in application for insurance construed in ordinary meaning.**

Where deceased answered "no" to the question "Have you at any time used alcoholic liquors in excess," held that the fact that insured might occasionally take a drink of alcoholic liquors or had at one time been drunk did not make his answer false, for it was presumed that he was answering that he did not use alcohol to excess as that word is ordinarily construed, and excess does not imply an occasional indulgence in strong drink.

13. **Insurance. Evidence. Question held truthfully answered.**

Where in reply to the question as to "what is your daily consumption of alcoholic drink?" the answer was "none," held that the mere fact that insured occasionally took a drink did not make this answer false for his answer must be construed to apply to his daily consumption.

14. **Insurance. Application questions in regard to alcohol drinks construed.**

Held that the application questions in regard to the use of alcoholic drink to excess is generally held to apply as to whether or not the use to excess is habitual or customary, and does not apply to an exceptional use to excess.

15. **Death. Death is presumed to have been accidental until the contrary is proved.**

Where it is shown by proof that death was self-inflicted, it is still presumed to have been accidental until the contrary is made to appear by a preponderance of all the evidence in the case.

16. **Death. Evidence. Circumstantial evidence to prove suicide must exclude with reasonable certainty any hypothesis of accidental death.**

Where circumstantial evidence alone is relied upon to prove suicide, the evidence must so preponderate in favor of suicide to exclude with reasonable certainty any hypothesis of death by accident and if it fails to do this, the side claiming suicide fails to maintain that fact.

17. **Insurance. Suicide. Suicide is not a valid defense to an insurance policy unless properly proved.**

In Tennessee, the suicide of the insured is not a valid defense to an action on a life insurance policy in the absence of a provision in the contract excluding suicide.

18. **Insurance. "Suicide clause." Favored by the law.**

The "suicide clause" which provides that the policy is void if the party commits suicide within a year after its issuance is treated with favor by the courts in Tennessee.

19. **Words and phrases. "Shall die by his own hand" synonymous with "suicide."**

The phrase "shall die by his own hand" as used in the suicide clause is synonymous with the phrase "shall commit suicide."

20. **Trial. Instructions. Instructions on suicide held proper.**

In the instant case the instructions given by the court on suicide are set out in the opinion in full and held proper.

21. **Insurance. Statutory penalty. Evidence. Burden of proof of proving bad faith in refusal of payment is on the plaintiff.**

In an action on an insurance policy where the statutory penalty for refusal to pay was sought, held that the burden of proving bad faith is on the plaintiff.

22. **Insurance. Evidence. Evidence held sufficient to justify insurance company in refusal to pay.**

Where the evidence showed that the proof of loss furnished the insurance company stated that deceased had committed suicide, and that this happened within one year after the issuance of the policy which provided that the policy should be void if the insured committed suicide within one year and the insured answered questions in his application that he did not use alcoholic liquors and there was evidence tending to show that he did, held that the insurance company was justified in refusing payment and the statutory penalty could not be assessed.

23. **Appeal and error. The appellate court is not bound to notice error unless it is properly assigned.**

In the absence of an appropriate assignment of error a complaint of alleged erroneous rulings of the trial court made in appeal brief is not sufficient to invoke the action of the appellate court.

24. **Appeal and error. Court may of its own motion notice errors not urged by counsel.**

Under the rules of the Court of Appeals, the court reserves the right to notice an error overlooked by counsel in their assignments of error.

25. **Insurance. Evidence. Admissions. The admissions on the part of an executrix held not to bind the beneficiaries of the estate.**

Where the executrix furnished a proof of death which stated the cause of death as one that would bar recovery on the policy, held that this could not be construed as an admission which would bar her action as executrix of deceased's estate, for her recovery in the action was for the beneficiaries of the estate and not for herself.

Appeal in Error from Third Circuit Court, Davidson County; Hon. E. F. Langford, Judge.

Modified and affirmed.

P. M. Estes and M. P. Estes, of Nashville, for plaintiff in error.

Keeble & Seay and J. C. Edwards, all of Nashville, for defendant in error.

FAW, P. J.    Mrs. Bertha King Robertson, as executrix of the will of Dr. Robert Taylor Robertson, deceased, sued the Life & Casualty Insurance Company of Tennessee in the circuit court of Davidson county and obtained a judgment in the third circuit court, and the defendant insurance company brought the case to this court by an appeal in the nature of a writ of error. As a matter of convenience, we will refer to Mrs. Robertson, executrix, as plaintiff, and to the Life & Casualty Insurance Company of Tennessee as defendant.

Dr. Robert Taylor Robertson died testate at his home in Mc-Minnville, Tennessee, on September 20, 1922, and the plaintiff is his widow and the executrix of his will. This suit was brought to recover upon an insurance policy issued by defendant on July 15, 1919, by which defendant insured the life of plaintiff's testator for

$5000 in consideration of the payment to defendant of a quarterly premium of $39.65, payable on the 15th days of July, October, January and April of each year for a period of twenty years from and after the date of the policy, or until the prior death of the insured. In consideration of the application attached to and made a part of the policy, and the payment of the premiums as aforesaid, the defendant insurance company promised to pay "to the executors, administrators or assigns of the insured" $5000, less any indebtedness due the company and any unpaid portion of the premium for the then current policy year, upon surrender of the policy properly receipted, immediately upon receipt of due proof of the death of the insured.

The policy contained a number of "conditions and provisions" which constituted a part of the contract, but for the purposes of this opinion it is necessary to mention only the four clauses known as the "grace clause," "incontestable clause," "suicide clause" and "reinstatement clause," which clauses are, in the order named, as follows:

"Grace. A grace of one calendar month (of not less than thirty days), shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. Except as herein provided the payment of a premium or installment thereof shall not maintain this policy in force beyond the date when the next premium or installment of premium is payable. If any premium or installment of premium be not paid before the end of the period of grace, then this policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company except as hereinafter provided."

"Incontestability. This policy shall be absolutely incontestable after two years from date of issue except for nonpayment of premiums and except for violation of the conditions of the policy relating to military and naval service in time of war."

"Suicide. If within one year from the date of issue of this policy the insured shall, whether sane or insane, die by his own hand the liability of the company shall be limited to the amount of the premiums paid thereon."

"Reinstatement. This policy may be reinstated at any time after default in the payment of any premium, unless the cash value has been paid or the extension period has expired, upon production of evidence of insurability satisfactory to the company, the payment or reinstatement of any indebtedness to the company hereon, and the payment of overdue premiums with interest at six per cent per annum."

At the time of the death of the insured all of the premiums theretofore due on the policy had been paid, but the premium due July 15, 1922, had not been paid when the period of grace expired on Au-

gust 15th, and, by its terms, the policy lapsed and was forfeited at that time. However, on August 21, 1922, the insured paid the premiums due and otherwise complied with the requirements of the reinstatement clause above quoted, and the policy was reinstated.

It was stated in plaintiff's declaration that the insured had borrowed from the defendant (on said policy) the sum of $175, which had not been repaid, and which was due and payable to defendant. Plaintiff sued for the amount due on the face of the policy, less the loan of $175, and also sued for interest on the amount thus due, together with a penalty of twenty-five per cent on account of the loss, damage and injury alleged to have been incurred and sustained by plaintiff by reason of defendant's refusal to pay, which refusal, it was alleged, was "in bad faith." Plaintiff demanded a jury to try the case.

The defenses of the insurance company to plaintiff's declaration were presented by four pleas as follows:

1. "It does not owe the plaintiff as she has alleged in her declaration."

2. "It did not promise or contract as the plaintiff has in her declaration alleged."

3. "This policy lapsed for nonpayment of premiums on the 15th day of August, 1922. In order to secure the reinstatement of same, the assured, Dr. R. T. Robertson, on August 21, 1922, executed an application for reinstatement. In this application, there were certain questions to which Dr. Robertson made answer as follows:

"Q.-3. (a) What is your daily consumption of alcoholic drink? A. None.

"(b) Have you at any time used any of them to excess? A. No.

"Q.-4 (a) Have you been ill since date of above policy? A. No.

"(b) If, so, state nature of illness, date and duration? A. No.

"Q.-5. (a) Have you consulted a physician since date of above policy? A. No.

"(b) If, so, whom, for what and when? A. No.

"Q.-6. Are you in sound health? A. Yes."

These answers were material to the risk, and were untrue, and known to be such by the assured, R. T. Robertson, but their falsity was not known to the defendant company, which reinstated the policy in reliance upon their truth. Therefore, by reason of said misrepresentations the reinstatement was void, and of no effect, and the policy was lapsed and no recovery can be had upon same."

4. "The defendant for further plea says that heretofore on the 15th day of August, 1922, the policy sued on in this cause lapsed for nonpayment of premiums, and thereby terminated and ceased to be a liability against this defendant. Therefore in order to reinstate said policy, so as to constitute it a liability against this defendant,

the deceased and assured Dr. R. T. Robertson on or about August 21, 1922, executed the aforesaid application for reinstatement which was favorably acted upon by this defendant.

. "This defendant says that on or about September 20, 1922, the assured R. T. Robertson committed suicide within the terms of the said policy, which act of suicide occurred within one year from the time of said reinstatement.

"The defendant therefore says that no recovery can be had against it on account of this policy."

The plaintiff joined issue on the first and second pleas, and replied to the third plea as follows:

"For replication to defendant's third plea, plaintiff says: That if the assured Dr. R. T. Robertson, on August 21, 1922, did execute an application for reinstatement of the policy sued on herein and did make the answers as set out in said plea, said answers were true. Plaintiff denies that said answers were material to the risk, or that they were known to be such by the assured R. T. Robertson.

"For further replication to said plea plaintiff denies that said answers of assured R. T. Robertson, as set forth in said plea, were untrue; or that they were known to be such by the assured R. T. Robertson, even if said answers were made by the assured R. T. Robertson, as set forth in said plea.

"For further replication to said plea plaintiff denies that if said answers were made by the assured R. T. Robertson and were untrue, as set forth in said plea, their falsity was unknown to the defendant company; and plaintiff further denies that defendant company reinstated the policy sued on in reliance upon the truth of said answers as set forth in said plea; and plaintiff further denies that, as set forth in said plea the reinstatement of said policy was for any reason void and of no effect, and denies that said policy was lapsed at the time of the death of the said assured R. T. Robertson, and avers that the same was in full force and effect."

The plaintiff also replied to the fourth plea (which was filed as an "additional plea" on November 14, 1924) as follows:

"For replication to additional plea of defendant filed November 14, 1924, plaintiff denies that the policy sued on in this case lapsed for nonpayment of premiums on August 15, 1922, or at any other date, and denies that said policy terminated and ceased to be a liability against the defendant on said date of August 15th or any other date, and for further replication plaintiff denies that on August 21, 1922, the insured Dr. R. T. Robertson executed an application for reinstatement which was favorably acted on by defendant.

"For further replication plaintiff avers that said policy was in full force and effect at the time said application for reinstatement was made, and denies that at the time of said application said

policy had lapsed, and denies that said application for reinstatement was necessary to keep said policy in force or restore it, and plaintiff denies that said application can and does in any manner affect plaintiff's rights or defendant's liability under said policy sued on.

"For further replication to said additional plea plaintiff denies that the insured, Dr. R. T. Robertson, committed suicide within the terms of said policy within one year from August 15, 1922, or at any other time."

The defendant joined issue on the foregoing replications of the plaintiff, and, upon the issues thus made by the pleadings, the case was tried to a jury in the third circuit court. At the close of the plaintiff's proof in chief the defendant moved for peremptory instructions in its favor, but the motion was overruled. Again, at the close of all the evidence, the defendant moved the court to direct a verdict in its favor, but the latter motion was likewise overruled.

Thereupon, the plaintiff moved the court to direct the jury to find a special verdict, which motion was granted by the court, and to which action of the court the defendant excepted.

The trial judge then stated to the jury the issues which would be submitted to them, and which will appear from the verdict of the jury hereinafter copied. His honor prefaced said statement of the issues with an explanatory statement as follows:

"Gentlemen of the Jury: You have heard all the evidence in this case. The facts are before you. There are questions of fact and questions of law that are to an extent mixed up and in view of that fact I have decided to pursue a course that is somewhat different, or is different, to the usual course that is followed in the trial of a case in a court of law, and before the arguments start in this case I will now state to you the things that you will consider in your determination of certain issues of fact that you are to find. I am doing this now in order that you can more closely and attentively listen to the arguments and apply it to what I am going to tell you, and also so counsel can more intelligently present their arguments in strict application to the things that I have reached the conclusion that are essential for the jury to pass on in this case, and I am going to ask that you return a special verdict. There are certain issues in this case, gentlemen, that you will be called on to decide and counsel will direct their arguments to these questions or these issues."

Then, after his detailed statement of the issues which he proposed to submit to the jury, the trial judge concluded as follows:

"These questions will be submitted to you in writing on a separate sheet, or sheets, of paper, and you can answer them on this paper at the places indicated for you to answer, and, as heretofore stated to you, when you have made your answers or findings of fact, each member of the jury will sign his name to the paper submitted to him.

"Gentlemen, I think this is the correct thing to do in this lawsuit. It just puts up to you, the jury, the material questions that are really determinative of this lawsuit, in so far as the facts are concerned, and you will make your direct answers to these interrogatories that will be submitted to you, 'Did he commit suicide? Were his answers true or false in so far as the use of liquor is concerned? Did this company act in good faith in withholding the amount that was due on this policy? You will make answers to these questions and show the amounts, etc., if you should find the issue submitted in the affirmative, or in favor of the plaintiff, then when this is done the court will award judgment, taking into consideration all the other evidence.' "

Thereupon "the case was argued by counsel," and then "the court charged the jury," and the jury retired and later returned into court "a special verdict" in writing, and signed by all the members of the jury, as follows:

"The court, having submitted to the jury for determination the following questions of fact:—

"First: In the application for reinstatement of the policy sued on, this question was asked; 'What is your daily consumption of alcoholic drink?' The insured answered, 'None.' Was this answer true?

"To this question the jury answers: Yes.

"Second: In the application for reinstatement of the policy sued on, the assured was asked the following questions: 'Have you at any time used any of them to excess?' He answered 'No.' Was this answer true?

"To this question the jury answered: Yes.

"Third: Did the assured, Dr. R. T. Robertson, die by his own hand, that is, did he commit suicide?

"To this question the jury answered: No.

"Fourth: Was the refusal of the defendant company to pay any amount due under the policy sued on in this case in good faith?

"To this question the jury answers: No.

"Fifth: If you answer the question just above that the refusal of the defendant company to pay any amount due on this policy was not in good faith, then, did such failure to pay inflict additional expense, loss, or injury upon the holder of said policy, and if so, in what amount?

"To this question the jury answers $1300.

"We, the jury, find the facts upon the questions submitted to us above in accordance with the answers we have made thereto; and we further find and provide that if the court should be of the opinion, upon the facts, that the law is for the plaintiff, then we find her, as the amount due upon the policy sued on, the sum of $4825, which

is the face of the policy, less the loan of $175, with interest thereon from the 20th day of November, 1922, to this date; and the further sum of $1300, as penalty.

"If the court should be of the opinion, upon the facts, that the law is for the defendant, then we find for the defendant."

A directed verdict upon another issue is disclosed by a minute entry as follows:

"And upon additional issue, requested by the defendant, as follows the jury found as follows:

"Additional issues for jury:

" 'In the application for reinstatement, signed by Dr. R. T. Robertson, on August 21, 1922, he also was asked questions and made answers as follows:

" '4-a   Have you been ill since date of above policy? A.   No.

" '-b   If so, state nature of illness, date and duration? A.   No.

" '5-a   Have you consulted a physician since date of above policy? A.   No.

" '-b   If so, for what and when? A.   No.

" '6a   Are you now in sound health? A.   Yes.

" 'The court submits to you the question as to whether the above answers to these questions were true.

" 'Were the above answers true? A.   Yes.'

"The jury, by direction of the court, answered the same, 'yes,' as shown thereon, the court so directed the jury because there was no evidence that the above answers in the said additional request were not true."

The judgment of the court upon the verdict was as follows:

"It is considered by the court that in its judgment the law is for the plaintiff and that the plaintiff is entitled to, and it is ordered by the court that the plaintiff, recover of the defendant, the sum of four thousand eight hundred and twenty-five ($4825) dollars as the amount due upon the policy sued upon after deducting the amount due upon the loan of one hundred and seventy-five ($175) dollars, and the further sum of five hundred seventy-eight and 20/100 ($578.20) dollars as interest, and the further sum of thirteen hundred ($1300) dollars as penalty, making altogether the sum of six thousand seven hundred and three and 20/100 ($6,703.20) dollars, and the costs of this cause for which let execution issue."

A motion on behalf of defendant for a new trial was made and overruled, and the defendant thereupon prayed, obtained and perfected an appeal in the nature of a writ of error to this court and has filed twenty-one assignments of error here, which correspond to assignments in its motion for a new trial below. We shall consider and dispose of the questions presented by the assignments of error in

the order which to us seems most convenient, without attempting to follow the order in which they are assigned by the defendant.

1. The action of the trial court in directing the jury (on the plaintiff's motion) to return a "special verdict" is assigned as error. It is said that this practice is unknown to the procedure in the circuit courts in this State, and in this instance prejudiced the rights of the defendant because it deprived defendant of the benefits of a general verdict.

"The right of a jury to find a special verdict is a common-law right going back at least as far as 13 Edward I. According to the early practice it was left to their discretion whether they should find a general verdict, or when they had any doubt as to the law, to find a special verdict and refer the law arising thereon to the court. Though the court could not direct the finding of a special verdict it could in its discretion recommend one, but the jury had the right to decline finding any other than a general verdict. This discretion of the jury as to the nature of its verdict extended to criminal as well as civil cases and such verdicts in criminal cases have been often upheld. The common-law right of a jury to render a special verdict has been conferred by statute in most of the States, and is probably, though to a limited extent in some States, universally exercised. In several jurisdictions such statutes provide that in actions for the recovery of money only or specific real property the jury, in their discretion, may render a general or special verdict. But in all other cases the court may direct them to find a special verdict in writing on any or all of the issues; and in at least one instance the jury are given discretionary power over the nature of their verdict in all civil cases. In other jurisdictions the power to require a special verdict is vested in the court to be exercised in its discretion. And in still others the right to a special verdict is made absolute if requested in time and the court cannot refuse to direct its finding. Such statutes are uniformly held to be valid over the objection that they violate the right of trial by jury guaranteed by the constitution." 27 R. C. L., pp. 865-866, par. 38.

"The special verdict was recognized at common law, and in the absence of statute a special verdict may always be returned." 25 Standard Ency. of Procedure, p. 977.

"In the absence of any statutory provision upon the subject, it is optional with the jury to return either a general or a special verdict. But the court may order a special verdict of its own motion, and, in most jurisdictions, either party is entitled to a special verdict upon properly requesting it." Elliott's General Practice, Vol. 2, sec. 926.

The subject of special verdicts by juries is treated in the following text books and encyclopedias: Tidd's Practice, Vol. 2, pp. 806-812;

Elliott's Practice, Vol. 2, sec. 925-935; Thompson on Trials, Vol. 2, secs. 2649-2663; 22 Ency. of Pleading & Practice, pp. 979-1001; 25 Standard Ency. of Procedure, pp. 943 et seq.; 27 R. C. L., pp. 865-869.

The statutes of Tennessee neither forbid nor make provision for the rendition of special verdicts by juries. There is no statute in this State specifically applicable to the subject; but in Caruther's History of a Lawsuit (4th Ed., by Martin), at pages 289-290, it is said:

"The verdict may be either general or special. The former is a finding for the plaintiff or defendant generally. The latter is of two kinds: 1. Where they find the facts, and leave it to the court to pronounce judgment for whichever party may be entitled to it upon those facts; and they further provide that if the court should be of opinion upon the facts that the law is for the plaintiff, then they find for him so much debt or damages; but if for the defendant, then they find for him. 2. They may find generally for the plaintiff his debt or damages, or whatever else he sues for, but subject to the opinion of the court upon a special case in regard to a matter of law; and should the court be of opinion upon the case stated that the law is for the defendant, then they find for him. The jury may thus get rid of the responsibility of deciding the law.

"Such verdict must find the facts positively, not circumstances from which the facts may be inferred. The court cannot presume one fact to be established from another found, however legitimate the inference may be, unless it is a presumption of law."

In the case of Keith v. Clark, 4 Lea, 718, 723, the court said:

It has been insisted with much earnestness that the court erred in directing, over the objection of the defendant, the jury to bring in a special verdict or finding of facts, in the event they could not agree upon a general verdict. We see no objection to this practice. It has been frequently followed in the courts of this State, and is not without precedent or authority; Tidd's Practice, p. 897 (807)."

In the case of Jones v. State, 2 Swan., 399, and also in the case of Short v. State, 7 Yerg., 510, the jury returned a special verdict, and, on appeal, no suggestion was made by the Supreme Court in either of the cases that the practice was irregular or improper.

In the case of Turney v. Railroad, 3 Hig., 628, the Court of Civil Appeals, speaking through Mr. Justice Higgins, earnestly and urgently recommended the adoption of the practice of requiring special verdicts.

Special verdicts are inferentially recognized by statements of the Supreme Court in three other Tennessee cases, viz.: Burdett v. Norwood, 15 Lea, 491, 495; Clark v. Keith, 8 Lea, 703, 706, 709; Hardin v. Cogswell, 5 Heisk., 549, 552.

We observe, in passing, that the issues submitted to the jury did not fully cover and include the issues made by defendant's pleas of nil debet and non assumpsit, and a special verdict at law should, in order to support a judgment, pass upon every material issue of fact made by the pleadings. 2 Elliott's General Practice, sec. 933; 25 Standard Ency. of Procedure, pp. 944 and 981; 22 Ency. of Pleading & Practice, pp. 981 and 984; 27 R. C. L., p. 875; Jones v. State, 2 Swan, 399, 403.

But defendant's attorney stated, in response to an inquiry by the court, that defendant did not ask for the submission to the jury of any other issues, and the defendant has not complained, either in the trial court or in this court, that the issues submitted to the jury did not cover and include all the issues made by the pleadings.

We think the record (aside from the pleadings) justifies the conclusion that on the trial below the defendant tacitly conceded that plaintiff was entitled to recover on the policy unless the insured committed suicide or made false statements in the application for reinstatement of his policy; and an examination of the evidence satisfies us that upon all issues made by the pleadings and not included in the issues submitted to the jury the facts are undisputed, and of a character that would have justified the court in directing the jury to find for the plaintiff on such issues.

We think that it was proper, in this case, for the trial court to treat material uncontroverted facts, or facts established by undisputed evidence, as though found for the plaintiff, although not formally included in the verdict of the jury. 22 Ency. of Pleading & Practice, p. 988, and Thompson on Trials, Vol. 2, sec. 2656; both citing cases from Wisconsin, viz.: Stringham v. Cook, 75 Wis., 589; Cooper v. Pennsylvania Insurance Co., 96 Wis., 362; Murphy v. Weil, 89 Wis., 146; Heddles v. Chicago, etc., R. Co., 74 Wis., 239; Schrubbe v. Connell, 69 Wis., 476. There are cases which announce a contrary doctrine, and hold that even though some of the material facts be undisputed, they should nevertheless be incorporated by the jury in the special verdict, but we think the Wisconsin rule is the better rule.

2. It is said that the court erred in striking from the file two pleas filed by defendant; that "these pleas were proper in form and presented defenses to which defendant was entitled under the law."

The elimination of the two pleas above-mentioned did not deprive the defendant of any valid defense to which it was entitled. Defendant was subsequently permitted to file an additional plea which (together with other pleas not stricken) included every valid and material defense that defendant was attempting to present by the pleas which were stricken. Obviously, if it was error to strike the two pleas, the error was harmless, and therefore not reversible.

3. The defendant did not elect to stand upon its motion for a directed verdict made at the close of the plaintiff's evidence, but, after the motion was overruled, defendant proceeded to put on witnesses in its own behalf and thereby waived the motion then made, and cannot now complain of its overrulement. Coal & Iron Co. v. Bennett, 8 Hig., 210; John Gerber Co. v. Smith, 150 Tenn., 255, 263 S. W., 974; Wilson v. Haley Live Stock Co., 153 U. S., 39, 38 L. Ed., 627; Union Insurance Co. v. Smith, 124 U. S., 405, 31 L. Ed., 497.

4. Through an assignment of error, the defendant complains of the action of the trial court in overruling its motion to direct a verdict in its favor at the close of all the evidence.

Through other assignments the defendant asserts that "there is no evidence in the record to support the judgment of the court and the verdict of the jury."

There are three additional assignments that there is no evidence in the record to support the verdict of the jury on the first, second and fourth issues, respectively.

Cognate questions are presented by assignments that (1) the trial court erred in overruling defendant's motion for a directed verdict and (2) that there is no evidence to support the verdict rendered by the jury, for "if there was sufficient evidence in support of the cause of action stated in the declaration to require submission of the case to the jury, there is necessarily some evidence to support the verdict of the jury." Citty v. Miller, 1 Tenn. App., R. 1, 3, and cases there cited.

After a careful and attentive examination and consideration of the entire record, we are of the opinion that the jury had evidence before it upon which to base its verdict on the first, second and third issues, but that there is no evidence in the record which supports the jury's verdict on the fourth issue. In other words, we are of the opinion that there is evidence in the record from which the jury could have found that the insured, Dr. Robertson, made true answers to the questions asked him in the application for reinstatement of the policy sued on in this case, and that he did not commit suicide, but that there is no evidence in the record which reasonably tends to show that the refusal of the defendant to pay any amount due under the policy was in bad faith. After the jury's verdict on the fourth issue is set aside, it follows, as a matter of course, that the verdict on the fifth issue (which fixes the amount of the penalty) must likewise be set aside.

There is no occasion for us to extend this opinion by stating herein the evidence bearing upon the respective issues of fact.

This evidence has been carefully considered by the court, but, as an appellate court, it is neither our duty nor our privilege to ascertain the comparative weight of the evidence in support of the respective claims and theories of the parties. Our conclusion that

there is some evidence to support the verdict on the first three issues and our conclusion that there is no evidence to support the verdict on the fourth and fifth issues are both conclusions of law, and not findings of fact.

5. The defendant's eleventh assignment of error is as follows:

"The court erred in excluding from the jury as substantive evidence of suicide the statement made by Dr. John S. Harris, in the proof of loss in answer to question 10, which question and answer are as follows:

" 'State the disease of which the decedent died, and any important medical facts connected therewith. If an accident contributed, was it the direct or indirect cause of death? Describe the injuries stating whether there were any contusions or wounds?

" 'Committed suicide, took poison. Lived only a few minutes after taking poison.'

"This was error because:

"These statements by Dr. John S. Harris, in the proof of loss, were competent evidence for the jury to consider on the question of whether or not Dr. Robertson, in fact, committed suicide, and the court erred in excluding the evidence from the jury as substantive evidence of suicide."

It appears that during the cross-examination of the plaintiff, Mrs. Robertson, she was asked by defendant's attorney to file as Exhibit No. 5 to her testimony a statement or certificate of Dr. John S. Harris, a physician practicing at McMinnville, which statement had been furnished to defendant insurance company as a part of the proofs of the death of the insured.

The objection made on behalf of plaintiff to one question and answer in Dr. Harris's certificate, the ruling of the trial judge thereon and his instructions to the jury with respect to same, will appear from an excerpt from the bill of exceptions as follows:

"By Mr. Seay:

"Now, if your Honor please, we want to object to this answer to question 10 of Dr. John S. Harris's statement, which is entitled the Attending Physician's Statement, the one just read by counsel for the insurance company.

" 'Question 10. State the disease of which the decedent died and any important medical facts connected therewith. If an accident contributed, was it the direct or indirect cause of death? Describe the injuries, stating whether there was any contusions or wounds.' His answer is 'Committed suicide. Took poison. Lived only a few minutes after taking poison.'

"We want to object to that, if your Honor please, as not substantive evidence of suicide. We feel that it would be a circumstance to be considered by the jury in determining the good faith of the insurance company in resisting this application, and we say this, if

your Honor please, that this should not be admitted as substantive evidence because it is hearsay testimony. I call your Honor's attention to question 3 and answer 3 as showing that direct. Question 3 is 'How long have you been his or her usual medical advisor? Were you deceased's attending physician during last illness? Was there associated with or preceding you in this case any other physician? If so, state who?'

"First, he said he was not his medical advisor. Only answered call. 'He was dead when I arrived.' Now I submit he could not know anything about the circumstances which caused his death except from hearsay.

"Objection sustained by the court.

"By the court:

"Gentlemen of the jury, in the statement that is purported to be signed and it is a fact that it was signed by this doctor, who went to the bedside of the deceased after death, he made out this proof of loss that was finally submitted to the company or the insurer in this case. The doctor in his statement there says that the deceased committed suicide, took poison. I direct you gentlemen of the jury, at this time, that that is not proof or substantive evidence of the fact that he did commit suicide. Right on the face of this paper that is made out and submitted it is shown that it is hearsay testimony. Hearsay testimony is not acceptable in a court to reach a fact that appears, as in this case, one of the main features of the lawsuit, and I direct you that that is not substantive proof of the fact of suicide. Now in this suit there is another feature; that it could be looked to as a fact and a circumstance in determining whether or not this company was acting in good faith in holding back the payment of the amount of this policy and you can look to it for that purpose, and plaintiff is suing for twenty-five per cent that they say they are entitled to because the company wrongfully withheld the amount of this insurance. They say that they have not wrongfully withheld it, that they are justified in withholding it because they say this man committed suicide and that the claimant in question, Mrs. Robertson, has submitted to them this proof of loss prima facie showing that he did commit suicide. Now, in determining the question as to whether or not the company acted in good faith in not paying, you can consider this statement of the doctor that he did commit suicide and for that purpose solely.

"By Mr. Estes:

"I understand you are including in that the question of whether he committed suicide or whether he took poison. There are two statements in there, that he committed suicide and the other, that he took poison. I understand you are excluding both of those statements.

"By the court:

"Just as I have stated to the jury.

"Defendant excepts to the ruling of the court and to the instruction given the jury by the court on this proposition."

· It will be observed that the certificate of Dr. Harris was offered in evidence by the defendant; that it was admitted as a circumstance to be considered in determining whether or not the defendant company "was acting in good faith in holding back the payment" of the amount due on the policy, but the jury was not permitted to consider it as "substantive evidence;" that the assignment in this court is that the court erred in excluding the aforesaid question and answer in the certificate of Dr. Harris as "substantive evidence of suicide." There was no contention in the court below and there is no insistence here that the aforesaid question and answer to which objection was made in the certificate of Dr. Harris was admissible as a declaration or admission on the part of the plaintiff as the beneficiary of the policy.

The rules governing the subject of "proofs of loss as evidence" are summed up in Bacon on Life & Accident Insurance, 4th Ed., sec. 650-651, as follows:

650. "Proofs of Loss as Evidence.—The preponderance of authority is in favor of the view that proofs of loss are admissible in evidence for the sole purpose of showing that the requirements of the policy concerning them have been complied with. But, although this is true, the Supreme Court of the United States has said that preliminary proofs, presented in compliance with a condition of the policy, are admissible as prima facie evidence of the facts therein against insured and on behalf of insurer. And if not contradicted require, if they show a breach of warranty or conditions of the policy, a judgment for defendant. These last mentioned cases and others hold that the statements made by the assured in the proofs of loss are admissions, and may be considered by the jury for what they are worth, and the modern rule is probably that the proofs of loss furnished by the assured are not only evidence that the condition of the policy requiring them has been complied with, but are also to be regarded as admissions and prima facie evidence of the facts therein stated. But the party furnishing them may show that statements in the proofs of loss were erroneous or inadvertently made, and the mistake can be shown by parol. This is especially true if the policy provides that proofs of loss shall be evidence for the company. In Massachusetts it is held that if the insured wishes to contradict the proofs of loss he must serve amended proofs on the insurer, but this doctrine is somewhat qualified in a later case. Proofs of loss purporting to be executed by the beneficiary need not be proved. Statements made by the physician attending the insured, contained in the proofs of death, are privileged and inadmissible to show that false answers were made in the application. By including such statements in the proofs the assured did not consent that they might be used

against her.  Such statements are wholly inadmissible if based on
hearsay, and it has been held that a certificate of a physician included
in the proofs of loss is not evidence of the fact it states, but is a sug-
gestion entitled to weight in considering insurer's conduct in resist-
ing payment.  The proceedings had on coroner's inquest are inadmis-
sible except to show that an inquest was had and though annexed to
proofs of loss is not an admission of cause of death.  Under the stipu-
lations of the policy the verdict of the coroner's jury may be admis-
sible in favor of the company.''

651.  ''The Same Subject—Later Cases.—From the authorities
cited in the preceding section and later authorities proofs of loss are
admissible to prove compliance with the conditions of the policy.
They are also admissible in favor of defendant as admissions and the
recitals in the proofs of death furnished by a beneficiary as to cause
of death are conclusive unless the beneficiary shows that the statement
is erroneous or made by mistake.  But before the beneficiary is estop-
ped by a statement in the proofs of death it must be shown that she
was identified with the proofs when they were taken.  It has been
held that the statement of a physician in proofs of death as to the
cause of death is a mere opinion not binding on plaintiff.  State-
ments in proofs submitted by a lodge without being authorized to do
so by the beneficiary as her agent, are not binding on such bene-
ficiary.''

In 14 R. C. L., pp. 1442, 1443, par. 605, it is said:

''While it has been said that proofs of loss are evidence of the
facts therein stated, in favor of as well as against the insurer, the
general rule is that the insured can introduce such proofs merely for
the purpose of showing a compliance with the policy, and not as
evidence of the facts therein stated.  And proofs of loss, even though
admitted without objection, are not proof of the facts necessary to
support the action, owing to their admissibility for the limited pur-
pose of showing a compliance with the conditions of the policy, ac-
cording to some courts, though others have held that they may be
considered as substantive evidence where received without objection.
Such proofs, however, are in the nature of an admission and are
admissible against the person who made them, even though they
include matters not required by the policy, especially where the
policy provides that the proofs shall be evidence of the facts therein
stated in behalf of, but not against, the company.  Proofs of loss
also are properly received in evidence and submitted to the jury
when the defense is interposed that the plaintiff has been guilty of
having sworn falsely therein.  However, proofs of loss furnished the
supreme council of a benefit society by a local council are inadmis-
sible against the beneficiary.''

See also Joyce on Insurance, 2nd Ed., Vol. 5, sec. 3772; 3 Elliott on Evidence, sec. 2387, 2389; Note, 44 L. R. A., pp. 854-855; Note, 17 A. & E. Anno. Cas., pp. 34-35.

The policy on which the present suit is based merely requires "proof of the death" of the insured—not proof of the cause of death —as a prerequisite to liability on the policy. In such case, the insurer cannot introduce the physician's certificate as to the cause of death. Connecticut Mutual Life Insurance Co. v. Schwenk, 94 U. S., 503, 24 L. Ed., 294; Helwig v. Mutual Life Insurance Co. (N. Y.), 28 Am. St. R., 578; Buffalo, etc., Co. v. Knights Templar, etc., Asso. (N. Y.), 22 Am. St. R., 839.

A pioneer case on the subject of proofs of death as evidence against the insured is Mutual Benefit Life Insurance Co. v. Newton, 89 U. S., 32, 22 L. Ed., 793, in which the court said: "All that we now hold is that the preliminary proofs are admissible as prima facie evidence of the facts stated therein against the insured and on behalf of the company. No case has come under our observation, other than the present, where the preliminary proofs presented by the insured have been entirely excluded as evidence when offered by the insurers, the question being in all the cases whether these proofs estopped the insured from impeaching the correctness of their statements, or from qualifying them, or whether they were subject to be explained and varied or contradicted on the trial."

But in the later case of Mutual Benefit Life Insurance Co. v. Higginbotham, 95 U. S., 380, 24 L. Ed., 499, 503, it was held that where the statements of the physician in his certificate were based on hearsay, the certificate was not competent evidence of the facts which it purported to state.

And again, in the case of Home Benefit Association v. Sargent, 142 U. S., 691, 35 L. Ed., 1160, where a physician's certificate which had been furnished to the insurer as a part of the proofs of death tended to show that the insured had committed suicide, and one of the defendant's requests to charge the jury was that the plaintiff, in her proofs of death, having stated to the defendant that the death was by suicide, it was incumbent upon her to prove, by preponderance of evidence, that the statement was mistaken and that the death was the result of accident; and another request for charge on behalf of defendant was that, the plaintiff's proofs of death having been presented in her name and by her agent in the matter, and constituting the essential preliminary to her action, they must stand as her acts, and the representations made therein must be taken as true, until at least some mistake was shown to have occurred in them. The trial court refused to charge as thus requested and, on appeal, his action in this respect was assigned as error. On this point the Supreme Court said:

"It is contended for the defendant that, because of the contents of
the proofs of death, the plaintiff is estopped from claiming that Hall's
death was caused otherwise than by suicide; and that, at least, the
court should have held that the burden originally upon the defend-
ant was shifted, by the introduction of the proofs of death, to the
plaintiff, and it became her duty to satisfy the jury, by a preponder-
ance of evidence, that Hall died otherwise than by his own hand.

"But the defendant was not prejudiced by the statements and opin-
ions contained in the proofs of death, and the plaintiff was not
estopped thereby, as a matter of law.   When the court was asked
to charge the jury that by the introduction of those proofs the burden
was shifted, the evidence was all before the jury, and was much more
full and complete than that upon which Dr. Jenkins had based his
opinion.   He himself had been examined as a witness and had tes-
tified as to what he knew or did not know at the time he made his
certificate, and all the facts of the case, so far as they were known,
had been explained in view of the contents of the proofs of death.
It appeared that most of the statements in the certificate of Dr.
Jenkins were based on hearsay.   The instructions asked for in that
respect, therefore, would have been erroneous."

See also Charter Oak Life Insurance Co. v. Rodel, 95 U. S., 232,
24 L. Ed. 433; Aetna Life Insurance Co. v. Ward, 140 U. S., 76, 35
L. Ed., 371, 376; Bentz v. Northwestern, etc., Association, 41 N. W.,
1037, 1039 (Minn.).

It will be observed, in the present case, that Dr. Harris was fully
examined and cross-examined as a witness on the trial before the
jury, and there adhered to the opinion that Dr. Robertson committed
suicide by taking poison, but it was disclosed by his testimony that
this was merely an inference drawn in part from things seen by him
and in part from hearsay.

We think the authorities cited herein, when analyzed, support the
conclusion that the trial judge did not err in directing the jury that
question 10 and the answer thereto in the aforesaid certificate of Dr.
Harris could not be considered as substantive evidence that Dr.
Robertson committed suicide.

It also follows from what we have just said that the trial court did
not err in refusing to give in charge to the jury the defendant's
special requests numbered 1 and 3, as follows:   Request No. 1.   "The
evidence in this case shows that in compliance with the terms of the
policy sued on herein, the plaintiff furnished to defendant proof
of loss, and that a part of this proof of loss was an affidavit of the
attending physician, Dr. John S. Harris, in which answer to ques-
tion 10 thereon, he stated that Dr. Robertson, the assured, 'committed
suicide, took poison, lived only a few minutes after taking poison.'

"These proofs of loss including the said affidavit have been introduced as evidence in this case.

"I charge you that the statements in this affidavit to the effect that Dr. Robertson 'committed suicide; took poison; lived only a few minutes after taking the poison,' are prima facie evidence of the truth of such statements, and in determining whether or not Dr. Robertson actually committed suicide by taking poison, you will look to said statements in said affidavit together with all the other competent proofs in the case, to determine how such facts are."

Request No. 3. "The policy in this cause required the plaintiff to furnish the defendant proofs of loss, and the evidence in the case shows that the plaintiff did furnish certain proofs of loss, and these proofs have been introduced in evidence. Among these proofs is an affidavit from the attending physician, Dr. John S. Harris, in which it was stated as the cause of the death that Dr. Robertson 'committed suicide, took poison, lived only a few minutes after taking poison.' I charge you that these statements in this affidavit accompanying the proof of loss and a part of the proof of loss are prima facie evidence of the acts stated therein against the plaintiff, and in favor of the defendant, and that you can look to these statements in this affidavit together with all the other competent proofs in the case, to determine whether or not Dr. Robertson did commit suicide."

6. F. M. Phillipi, actuary for the defendant insurance company, was introduced as a witness by defendant, and testified that the proofs of the death of Dr. Robertson, when received by defendant, were accompanied by a letter of transmittal dated September 29, 1922, signed by C. D. Walling, and written on the letterhead of the State Bank & Trust Company of McMinnville which showed that C. D. Walling was the cashier (of said State Bank & Trust Company). Said letter was filed as an exhibit to Mr. Phillipi's testimony, and reads as follows:

"Life and Casualty Insurance Company,
                    "Nashville, Tennessee.
"Gentlemen:

"We are enclosing you the proof records of the death of Dr. Robert Taylor Robertson who died by suicide on the night of September 21, 1922.

"The writer has been asked to see to the collection of policies Nos. 632 and 515 for $5000 each total $10,000 by your company on deceased life.

"I am holding these two policies and any information that you might want can be gotten through me and will be pleased to assist you in any manner that I can.

                              "Yours very truly,
                              "(Signed) C. D. Walling."

When the above quoted letter was offered in evidence plaintiff's attorney objected to that part of the first clause thereof wherein it is stated that Dr. Robertson "died by suicide," and the objection was sustained, to which ruling defendant excepted, and has assigned the action of the trial court in that respect as error.

It does not appear that plaintiff authorized Mr. Walling to make the statement in question, or that she knew that he had made such statement in his letter to defendant. We think it sufficiently appears from the record that Mr. Walling was the agent of the plaintiff, Mrs. Robertson, for the purpose of transmitting the proofs of death to defendant, but it does not appear that the making of representations concerning the cause of the death of Dr. Robertson was within the scope of his agency, and plaintiff was therefore not chargeable therewith. Jones on Evidence, 2nd Ed., Vol. 2, sec. 944, pp. 1741-1742. It follows that there was no error in the exclusion of the statement in said letter that Dr. Robertson had died by suicide.

7. Through assignments of error it is asserted that the charge of the court with respect to the first and second issues submitted to the jury was erroneous. The instruction thus complained of read as follows:

"When you come to consider the question of the truth or falsity of the answer 'No,' made by the insured, Dr. Robertson, to the question, 'Have you at any time used any of them to excess?—referring to alcoholic drink—you will consider the extent to which the applicant used intoxicating liquors; whether his answer with respect thereto are representations of the fact, or mere opinions on his part. And I further charge you that the mere fact that the insured may have been drunk one time in his life, if you so find, and this at a time ante-dating the time that the application for reinstatement was made more than a year, this fact would not be sufficient to justify you in finding that the answer to this question was untrue. An occasional use of liquor will not be construed as falsifying an answer that the applicant had not at any time used alcoholic drink to excess. Questions as to the use of intoxicating drink will be taken to mean what the words implied by those questions usually and ordinarily mean, bearing in mind that they are not words of art, but words of every day meaning, and that this insurance contract is a contract not between professional men, or lawyers, but a contract that these companies profess to make with the world. And it is for the jury to weigh all the circumstances, and to determine, in view of all of them, whether the applicant used liquors to excess, or otherwise answered the questions falsely. The court further instructs you that the word 'used' in this question which was submitted to the applicant, Dr. Robertson, that as to whether he at any time used alcohol drinks to excess, does not imply an occasional indulgence in strong drink. It means to be accustomed, to make a practice of.

It is a word that is synonymous with custom or habit. A negative answer to this question does not constitute a misrepresentation or false statement which would void the policy issued thereunder because it is shown that the assured had sometime, but not habitually, drunk to excess.

"In considering your verdict, as to whether the question in the application for reinstatement asked of the insured, Dr. Robertson, as to what was his daily consumption of alcoholic drink, and the truth or falsity of the answer 'None,' you will consider all the testimony in this case, and determine therefrom as to whether or not Dr. Robertson was a daily consumer of alcoholic drink. In order for you to find that the answer to this question was untrue, the evidence would have to show more than that Dr. Robertson occasionally took a drink, or that he had been publicly drunk on one occasion, or occasionally took a drink of liquor. And in this connection you will consider the testimony of the witness for the plaintiff as well as the witness for the defendant, and you can accept the testimony of those witnesses whom you believe to have spoken the truth, and disregard the testimony of any witness whom you believe has not spoken the truth.

"I further charge you gentlemen, in this connection, that in order for you to find that the answer to this question was untrue, it must be shown by a preponderance of the evidence that the insured, Dr. Robertson, was accustomed to and in the habit of consuming alcoholic drink, or was an habitual user of alcoholic drink, and if a preponderance of evidence fails to show you this, it would be your duty to find that the answer to this question was true as made by Dr. Robertson."

It may well be assumed that if the insured's "daily consumption of alcoholic drink" was large, or he had at any time used alcoholic drinks to excess, such facts would influence the judgment of the insurance company because that would tend to "increase the risk of loss;" hence the answers of the insured to the two questions directed to these matters, or either of them, if false, would avoid the reinstatement of the policy and bar a judgment for plaintiff. Act of 1895, Ch. 160, sec. 22 (Shan. Code, sec. 3306); Volunteer State Life Insurance Co. v. Richardson, 146 Tenn., 589, 244 S. W., 44, 26 A. L. R., 1270; Pacific Mutual Life Insurance Co. v. Galbraith, 115 Tenn., 471, 21 S. W., 204, 112 Am. St. R.

But the question, "What is your daily consumption of alcoholic drink?" seems to assume that the insured consumed alcoholic drinks, and the inquiry was directed to the extent of his daily consumption; hence, when the question is thus understood, the answer "none" is simply a statement by the insured that he was not addicted to the daily use of alcoholic drink. McEwen v. New York Life Insurance

Co., 42 Calif. App., 133, 183 Pac., 373; Keatley v. Grand Fraternity, 2 Boyce (Del.), 267, 78 Atl., 874.

And, with reference to the question as to whether the insured had at any time used any alcoholic drinks to excess, it is generally held that questions as to whether an applicant for insurance has used or uses intoxicating liquor, and, if so, the extent and average quantity, do not refer to an occasional or exceptional use of such drinks, or an exceptional use to excess, but to the habitual or customary use. See Annotation in 26 A. L. R., pp. 1284-1288, where many adjudged cases supporting the proposition just stated are cited and digested. See also Joyce on Insurance, 2nd Ed., Vol. 4, sec. 2096; Bacon on Life & Accident Insurance, 4th Ed., Vol. 1, sec. 285, pp. 542-546; Northwestern Life Insurance Co. v. Muskegon National Bank, 122 U. S. 501, 30 L. Ed. 110; Knickerbocker Life Insurance Co. v. Foley, 105 U. S., 350, 26 L. Ed., 1055.

The evidence touching the first and second issues was conflicting, and it was for the jury to say whether or not the insured made true answers to the questions therein set forth. Joyce on Insurance, 2nd Ed., Vol. 4, pp. 3612-3613, sec. 2096. And we think the charge of the court, hereinbefore copied, with reference to the first and second issues is supported by the weight of authority.

8. Error is assigned upon the courts charge relating to the issue as to whether or not the insured, Dr. Robertson, committed suicide. The charge thus complained of is as follows:

"Now, gentlemen, as to the law of this case, in determining the question as to whether or not the assured, Dr. Robertson, did or did not commit suicide, the court charges you that the presumption of law is that he did not do so, but this presumption may be overcome by facts and circumstances which show the contrary by a preponderance of the evidence in the case. In determining what facts are proven in the case you should carefully consider all the evidence, with all the circumstances of the subject-matter of the inquiry as detailed by the witnesses.

"It is insisted by the defendant in this case that the deceased and insured, Dr. Robertson, committed suicide by taking poison. In determining this question you will first consider whether or not a preponderance of the evidence shows that Dr. Robertson's death resulted from poison. The court charges you that if you should find this to be true, from a preponderance of the evidence, the burden would still rest upon the defendant insurance company to show the fact of suicide by a preponderance of the evidence. In other words, where the act which caused the death may be either accidental or suicidal, the burden rests upon the insurance company to show the fact of suicide by a preponderance of the evidence. The presumption arising from a love of life, which is created for its preservation,

is like every other natural law, always within the contemplation of the courts and juries, and you can consider this in determining the question as to whether or not the assured, Dr. Robertson, committed suicide. It follows that when circumstantial evidence is relied on the defense of suicide fails unless by a preponderance of the evidence in the case the jury find that the insured met his death by suicide.

"The court further charges you, gentlemen, that this presumption against suicide arises even where it is shown by proof that death was self inflicted, it being presumed to have been accidental until the contrary is made to appear by a preponderance of all the evidence in the case.

"Where circumstantial evidence alone is relied upon to prove suicide, the evidence must so preponderate in favor of suicide, to exclude with reasonable certainty any hypothesis of death by accident, and if it fails to do this, that side claiming suicide fails to maintain that fact.

"In determining the question as to whether or not the insured, Dr. Robertson, met death by suicide, you will take into consideration his habits of life; the proof of his disposition; proof as to his family life, whether happy or otherwise, the proof as to his love and devotion to his children; the proof of his indebtedness, if any; the proof of his success or lack of success in business; his devotion or lack of devotion to his wife. You will take into consideration any paper writing that might have been left among his effects or found among his effects, as well as all other facts and circumstances proven in the case, and give all these facts and circumstances shown in evidence just such weight as in your judgment you think they are entitled to in determining this question, and after doing so return such verdict on this question as you may find the facts to be from a preponderance of all the evidence."

In Tennessee, the suicide of the insured is not a valid defense to an action on a life insurance policy, in the absence of a provision in the contract excluding suicide. Jackson v. Loyal Additional Benefit Association, 140 Tenn., 495, 205 S. W., 318.

But, as we have seen, the policy on which the present suit is based contains a provision that "if within one year from the date of issue of this policy the insured shall, whether sane or insane, die by his own hand the liability of the company shall be limited to the amount of the premiums paid hereon."

And "the suicide clause of the kind we have before us is treated favorably by the courts." Silliman v. Insurance Co., 131 Tenn., 303, 313, 174 S. W., 1131.

The phrase "shall die by his own hand," as used in the above quoted clause, is synonymous with the phrase "shall commit suicide." Bacon on Life & Accident Insurance, 4th Ed., Vol. 2, sec. 431; Joyce on Insurance, 2nd Ed., Vol. 4, sec. 2658.

If the insured did not die from natural causes, there was no eye witness to the act which caused his death, and the presumption is that his death was not attributable to suicide. Insurance Co. v. Bennett, 90 Tenn., 256, 16 S. W., 723, 25 Am. St. R., 685; Tenn. Cen. Railroad Co. v. Herb, 134 Tenn., 397, 401, 183 S. W., 1011.

In the recent (1926) edition of Jones on Evidence (in Vol. 1 sec. 254) it is said:

"It is said by courts of first importance that the suggestion that a man of vigorous constitution, sound health, and good spirits would commit suicide is so highly improbable as to be unreasonable, and that the natural instinct which leads men in their sober senses to avoid injury and preserve life is of itself an element of evidence to the contrary. There is no presumption of suicide. In fact there may be said to be a positive presumption against suicide. But 'the presumption against death by suicide is prima facie only and rebuttable. It prevails when the cause of death is unknown. It does not prevail as a presumption in the presence of facts bearing upon the question whether death is intentional or accidental.' The presumption is one of fact, but it arises in cases of unexplained disappearance under circumstances indicating the death of the person who has disappeared, and even where it is affirmatively shown that death was self-inflicted, provided the circumstances are not such as to show intentional self-destruction. 'The presumption against suicide is very strong—strong as the universal instinct for life—but it may be overcome by proof, just as the instinct for life in instances may be overcome by a desire for death."

Joyce, in the second edition of his work on insurance (Vol. 5, sec. 3773), says: "Where the death may have resulted from suicide, accident, murder, negligence, or any other means, the presumption of law is against suicide and also against murder and the burden of proof is upon the party asserting such matters to overcome said presumption."

Self destruction is contrary to the general conduct of mankind, and it is held that where the circumstances leave room for doubt the presumption is against suicide, and this presumption arises even where it is shown by proof that death was self-inflicted, it being presumed to have been accidental until the contrary is made to appear. See cases cited and digested in Note, 50 LRANS, pp. 1008-1011.

"When circumstantial evidence is relied upon to establish a death by suicide, it is held that the party averring the fact must prove it by facts which exclude every reasonable hypothesis of natural or accidental death." Joyce on Insurance, 2nd Ed., Vol. 5, sec. 3774, p. 6183. See also Leman v. Manhattan Life Insurance Co. (La.), 24 LRA, 589; Supreme Lodge K. of P. v. Beck, 181 U. S., 49, 45 L. Ed., 741.

In our opinion, the charge of the court, supra, relating to the issue as to whether or not the insured, Dr. Robertson, committed suicide is well supported by the authorities above cited.

In the circuit court the plaintiff sought to make the question that suicide of the insured, if proved, could not avail the defendant as a defense in this case, because the death of the insured did not occur within one year after the date of the issuance of the policy; but, by his ruling on a demurrer of plaintiff to defendant's plea of suicide and by submitting the issue of suicide or not to the jury, the trial judge ruled, in effect, that the suicide of the insured within one year from and after the reinstatement of the policy on August 21, 1922, would, if proved, fall within the terms of the "suicide clause" of the contract, and avoid the policy to the extent therein provided. This ruling seems to be in harmony with the holding of the Supreme Court in the case of Pacific Mutual Life Insurance Co. v. Galbraith, supra, and not necessarily in conflict with the case of Silliman v. Insurance Co., 131 Tenn., 303, supra. The opinion in the Galbraith case, supra, seems to have met the approval of so eminent a text writer as Mr. Joyce. (See 2nd Ed., Vol. 3, sec. 1276d.). The case of Goodwin v. Provident Savings Loan Association, 97 Iowa, 226, 66 N. W., 157, 32 LRA, 473, 59 Am. St. R., 411, cited by Joyce as supporting the contrary view, was expressly disapproved by our Supreme Court in the Galbraith case, supra, (page 482).

But, as the jury has found that the insured did not commit suicide and we hold that there is support in the record for the conclusion that the evidence is not sufficient to overcome the presumption against suicide, it is unnecessary for us to decide the legal question as to whether or not the reinstatement of the policy on August 21, 1922, revived the "suicide clause" so as to make suicide of the insured within one year thereafter, if proved, a defense to an action on the policy.

9. We find no error in the charge of the court to the jury with respect to the question as to whether or not the refusal of the defendant company to pay the policy sued on was in good faith, unless it be the instruction that "the burden of proof is on the defendant, insurance company, to show that they exercised this right in withholding in good faith, and that they had reasonable grounds for withholding."

It is provided by section 1 of chapter 141 of the Acts of 1901, that "the several insurance companies of this State, and foreign insurance companies and other corporations, firms, or persons doing an insurance business in this State, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition

to the loss and interest thereon, a sum not exceeding twenty-five per cent on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy; and, provided, further, that such additional liability within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.'' See Shannon's New Code, sec. 3369a141.

This is a penal statute and must, therefore, be strictly construed. Insurance Co. v. Kirkpatrick, 129 Tenn., 55, 72, 164 S. W., 1186; DeRossett Hat Co. v. London, etc., Insurance Co., 134 Tenn., 199, 210, 183 S. W., 720; Kimball v. Parks, 151 Tenn., 103, 107, 268 S. W., 117.

A reading of the above quoted statute impresses us that it imposes upon the holder of an insurance policy who sues to recover thereon the burden of showing that the refusal of the insurer to pay the loss within sixty days after demand, etc., was not in good faith. The contrary view is indicated by a seemingly casual statement appearing in the opinion of the court in the case of Insurance Co. v. Kirkpatrick, supra (page 73), but the statement was there made arguendo and, so far as we can see from the opinion, there was no controversy in the case with respect to the burden of proof, so that, the statement of the court on that point was an obiter dictum and, therefore, not controlling authority. L. & N. R. Co. v. County Court, etc., 1 Sneed, 637, 695; Clark v. Lary, 3 Sneed, 77, 80; Henley v. State, 98 Tenn., 665, 737, 41 S. W., 1104; Cohens v. Virginia, 6 Wheat. (U. S.), 399, 5 L. Ed., 257; Southern Railway Co. v. Simpson, 131 Fed., 705, 709.

But if, as we have already held, there was no evidence from which it appeared that the refusal of the defendant to pay the loss in question was in bad faith and that the court should have directed the jury to find that issue for the defendant, the charge which was given to the jury on that subject becomes immaterial. If the burden was on the Insurance Company to show that its refusal to pay was in good faith, we think that burden shifted when it appeared that the proofs of death furnished to the company on behalf of plaintiff contained the aforementioned statement of Dr. Harris that the insured ''committed suicide, took poison,'' and that the known circumstances attending the death of the insured tended to show that the statement of Dr. Harris was true. These facts, together with the evidence in the possession of the defendant touching the question of the drinking of alcoholic liquors by the insured, were, in the absence of evidence tending to show that the defendant was actuated by any ulterior or improper motives in its refusal to pay, sufficient to justify

the court in holding, as a matter of law, that defendant was not liable for a penalty. Harowitz v. Concordia Fire Insurance Co., 129 Tenn., 691, 704, 168 S. W., 163; Grain Company v. Weaver, 128 Tenn., 609, 635, 163 S. W., 814; Silliman v. Life Insurance Co., 135 Tenn., 646, 652, 188 S. W., 273; Kidd v. National Council, etc., 137 Tenn., 398, 406, 193 S. W., 130; City of Bristol v. Bostwick, 146 Tenn., 205, 216, 240 S. W., 774; Continental Insurance Co. v. Smith, 3 Hig., 161, 174; Kittrell v. Insurance Co., 1 Hig., 253, 261.

10. It results from the views expressed herein that the judgment against the defendant insurance company for $1300 as a penalty is reversed, the verdict on the fourth and fifth issues submitted to the jury is set aside, and, insofar as the plaintiff sues for a penalty because of defendant's refusal to pay, her suit is dismissed.

The defendant's assignments of error directed to matters other than the penalty are all overruled and, except as to the penalty, the judgment of the circuit court is affirmed. Judgment will be entered here in favor of the plaintiff, Mrs. Bertha King Robertson, executrix of the will of Dr. Robert Taylor Robertson, deceased, and against the defendant Life and Casualty Insurance Company of Tennessee, and the sureties on its appeal bond, for the sum of $5403.-20, with interest thereon from the date of the judgment of the circuit court (November 19, 1924), and for all the costs accrued in the circuit court and three-fourths of the costs of the appeal. The remaining one-fourth of the costs of the appeal will be adjudged against the plaintiff, Mrs. Bertha King Robertson, executrix, etc.

Crownover and DeWitt, JJ., concur.

## ON PETITION FOR REHEARING.

### July 29, 1927.

This case is before us on a petition for a rehearing filed by the plaintiff in error, Life and Casualty Insurance Company of Tennessee.

In the circuit court, the defendant in error, Mrs. Bertha King Robertson, as executrix of the will of her deceased husband, Dr. Robert Taylor Robertson, obtained a judgment against the plaintiff in error upon an insurance policy issued by plaintiff in error July 15, 1919, by which plaintiff in error insured the life of the testator of defendant in error for $5000. The judgment of the circuit court was for $4825 as the amount due on the policy, after deducting a loan of $175 made to the insured by the plaintiff in error, and the further sum of $578.20 interest thereon, and also an additional sum of $1300 as a penalty, making altogether the sum of $6703.20.

In our former opinion, we held that there is no evidence in the record which reasonably tends to show that the refusal of the plain-

tiff in error to pay any amount due under the policy was in bad faith, and the judgment for a penalty was reversed and the penalty disallowed, but otherwise the judgment of the circuit court was affirmed.

In the petition for a rehearing we are asked to review and reverse our rulings upon a number of questions discussed and decided in our former opinion, but the chief insistence urged in the petition relates to the eleventh assignment of error, which is directed to the action of the trial court in excluding from the jury, as "substantive proof of the fact of suicide," certain statements to the effect that the insured, Dr. Robertson, committed suicide by taking poison, which statements appeared in a certificate of Dr. John S. Harris included in the proofs of death furnished to plaintiff in error.

In our former opinion we quoted the eleventh assignment of error and then quoted from the bill of exceptions the stenographic report of the proceedings below with respect to the matters of which plaintiff in error complains through its eleventh assignment. These quotations may be found on pages sixteen to nineteen, inclusive, of the opinion, and need not be repeated here.

Immediately following the quotations mentioned, and preliminary to the statement of our views and citation of authorities upon the question raised by the eleventh assignment, we said: "It will be observed that the certificate of Dr. Harris was offered in evidence by the defendant; that it was admitted as a circumstance to be considered in determining whether or not the defendant company 'was acting in good faith in holding back the payment' of the amount due on the policy, but the jury was not permitted to consider it as 'substantive evidence;' that the assignment in this court is that the court erred in excluding the aforesaid question and answer in the certificate of Dr. Harris as 'substantive evidence of suicide.' There was no contention in the court below and there is no insistence here that the aforesaid question and answer to which objection was made in the certificate of Dr. Harris was admissible as a declaration or admission on the part of the plaintiff as the beneficiary of the policy."

Petitioner urgently, but respectfully, insists that this court "entirely overlooked the whole position of appellant in this lawsuit in reference to this matter," when we stated that "there was no contention in the court below and there is no insistence here that the aforesaid question and answer to which objection was made in the certificate of Dr. Harris was admissible as a declaration or admission on the part of the plaintiff as the beneficiary of the policy;" and, in the petition, it is pointed out that in the brief (not the assignments of error) of plaintiff in error it is said that the "statement and proof of loss as to the cause and manner of death of the assured

are competent evidence as admissions against the plaintiff and in favor of the company," and authorities are then cited which, it is there insisted, sustain the proposition thus advanced.

It is true that the argument indicated by the above quotation appears in the brief for plaintiff in error, but such argument is entirely outside of and beyond the scope of the assignment of error. A reexamination of the record and the assignments of error has confirmed our opinion that neither in the trial court nor in its assignments of error in this court has the plaintiff in error claimed that the statements of Dr. Harris now in question were competent to go to the jury as an admission of the defendant in error against her interest.

It is obvious that the attention of the trial judge was not directed to a claim that the excluded statement of Dr. Harris was competent evidence of an admission made by defendant in error that her testator had committed suicide.

Moreover, in the absence of an appropriate assignment of error, a complaint of alleged erroneous rulings of the trial court made in appellant's brief is not sufficient to invoke the action of the appellate court. Priest v. Banking and Trust Company, 148 Tenn., 87, 91, 251 S. W., 904; Spofford v. Rose, 145 Tenn., 583, 613, 237 S. W., 68.

An assignment of error on the admission or rejection of testimony is insufficient, unless the appellate court is "able to see from the face of the assignment of error itself the exact point raised." Gorrell v. Mayor, etc., of Newport, 1 Tenn. Chy. App. R., 120, 133.

However, the rules of this court reserve to the court the right to "notice an error overlooked by counsel" in their assignments of error, and, giving this rule a liberal interpretation, we have considered the question of the competency of the statement of Dr. Harris in his certificate, that the deceased Dr. Robertson, committed suicide, etc., as an admission of the defendant in error.

We shall not undertake to restate the facts bearing upon this question, further than to say that Dr. Harris' statement was not offered in evidence by defendant in error, but, although filed as an exhibit to her testimony, she was asked to file it by counsel for plaintiff in error; that it was mailed to plaintiff in error by Mr. C. D. Walling, a banker of McMinnville; that Mr. Walling obtained and forwarded proofs of the death of the insured because he had been asked by defendant in error to "see to the collection" of the policy; that defendant in error, Mrs. Robertson, was not in McMinnville at the time the proofs of death were obtained and forwarded to plaintiff in error by Mr. Walling and she had no knowledge or information of the contents of the certificate of Dr. Harris; that the policy sued on merely requires "proof of the death" of the insured—not proof of the cause of death—as a prerequisite to the liability of plaintiff in

error thereon; that Dr. Harris' certificate and the other "proofs of death" were transmitted to plaintiff in error by Mr. Walling (as shown by his letter of transmittal) as "proof records of the death of Dr. Robert Taylor Robertson"—not as proofs of the cause of Dr. Robertson's death; that there is no provision in the policy that the contents of the proofs of death shall be evidence of the facts therein stated; that the policy is payable to "the executors, administrators or assigns of the insured;" that in bringing this suit defendant in error sued as the executor of the will of the insured, Dr. Robert Taylor Robertson, and her letters testamentary are in evidence; that the insured left surviving him a widow (the defendant in error) and three infant children, but the will of Dr. Robertson is not in evidence and the ultimate beneficiaries of the proceeds of the policy are not disclosed.

The admissions of a party in interest, although made out of court, are, as a general rule, competent evidence against him. Jones on Evidence, 2nd Ed., Vol. 2, sec. 898, et seq. It should be borne in mind, however, that, in taking steps to collect the insurance policy here involved, the defendant in error was acting as executrix of the will of Dr. Robertson, and therefore as trustee for the beneficiaries of that will. Whatever was necessary to be done to put herself in a position to prosecute the claim for the proceeds of the policy here in controversy, she was authorized to do, but as there was no obligation resting on the beneficiaries, either under the contract or under the law, to furnish to plaintiff in error proofs of the cause of the death of the insured, the executrix had no power to bind the beneficiaries under the will by extra-judicial admissions concerning the cause of the death of the insured. Buffalo Loan, etc., Co. v. Knights Templar, etc., Association, 126 N. Y., 450, 22 Am. St. R., 839, 843.

It might be argued with much plausibility that, as the policy was payable to the executors, administrators and assigns of the insured, the defendant in error as executrix is the beneficiary named in the policy, and therefore admissions against her interest, made by her, relevant to the issues in the case, are competent evidence when offered by the insurer. But, assuming that the proposition just stated is sound, it does not necessarily follow that the statement of Dr. Harris to the effect that the insured committed suicide, etc., is competent evidence of an admission against interest by the defendant in error. This depends on whether Dr. Harris was or not the agent of defendant in error to furnish information to plaintiff in error concerning the cause of the death of Dr. Robertson. Elliott on Evidence, Vol. 3, sec. 2388.

"When a party to any proceeding expressly refers to any other person for an answer to any particular subject in dispute, such

answer is, in general, evidence against him, for the reason that he makes such third person his accredited agent for the purpose of giving such answer.'' Jones on Evidence, 2nd Ed., Vol. 2, sec. 971, p. 1785.

''But such a reference does not make the person referred to an agent for the purpose of making general admissions. The declarations are not evidence unless strictly within the subject matter in relation to which the reference is made.'' Idem, sec. 972, p. 1786.

In view of the record facts and the rules of law we have stated, we are of the opinion that the statement in the certificate of Dr. Harris that Dr. Robertson committed suicide was not admissible in evidence against defendant in error as an admission by her against her interest. Bentz v. Northwestern Aid Association (Minn.), 41 N. W., 1037, 1039.

This disposes of the main question discussed in the petition for a rehearing. It is insisted in the petition that this court misunderstood and misapprehended a number of cases cited in our former opinion. We have reexamined these cases and we find them now as we understood them when the original opinion was prepared. We fear that in some instances petitioner's counsel have contented themselves with the headnotes to the cases, and in other instances they have misapprehended the point to which the cases were cited by us.

On the whole case we are satisfied with the result reached in our former judgment and the petition for a rehearing is denied and dismissed at the cost of the petitioner.

Crownover and DeWitt, JJ., concur.